PD-1639-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/14/2015 5:13:21 PM
Accepted 1/21/2015 12:02:26 PM
ABEL ACOSTA
CLERK

No.  PD-1639-14

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

LOREDANA BERTOLOTTI GORE,                                 Appellant

v.

THE STATE OF TEXAS,                                              Appellee

Appeal from Galveston County

\* \* \* \* \*

STATE'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

\* \* \* \* \*

January 21, 2015

ABEL ACOSTA, CLERK

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

# TABLE OF CONTENTS

IDENTITY OF PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

QUESTIONS FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**1) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**2) If a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid?**

**3) Do exigent circumstances permit an officer to obtain a non-consensual blood specimen when he suspects a person of being under the influence of an unknown drug when it typically takes 3- 3 hours to obtain a warrant in his jurisdiction?**

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

APPENDIX  (Opinion of the Court of Appeals)

i

## IDENTITY OF THE PARTIES

Appellant: **Loredana Bertolotti Gore.**

Appellee: **The State of Texas.**

Trial Judge:  **Hon. Michelle Slaughter.**

Counsel for Appellant at trial: **Maurice Najer**, Attorney at Law, 3027 Marina Bay Drive, Suite207, League City, Texas 77573.

Counsel for Appellant in the Court of Appeals: **Greg Russell**, Attorney at Law, 711 59th Street, Galveston, Texas 77551.

Counsel for the State at trial: **Robert Buss**, Assistant District Attorney, 600 59th Street, Galveston, Texas 77551.

Counsel for the State in the Court of Appeals: **Allison Lindblade**, 600 59th Street, Galveston, Texas 77551.

Counsel for the State before the Court of Criminal Appeals:  **Lisa C. McMinn**, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711.

# INDEX OF AUTHORITIES

## Cases

*Aliff v. State*, 627 S.W.2d 166 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . . . . . 10

*Arizona v. Gant*, 556 U.S. 332 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . . . 4-5, 10

*Davis v. United States*, 131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . 10

*Board of Education v. Earls*, 536 U.S. 822 (2002).. . . . . . . . . . . . . . . . . . . . . . 6

*Gore v. State*, __S.W.3d__ No. 01-13-00608-CR
(Tex. App.–Houston [1ˢᵗ Dist], 2014). . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 6

*Illinois v. Krull*, 480 U.S. 342 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . 5

*Karenev v. State*, 281 S.W.3d 428 (Tex. Crim. App. 2009).. . . . . . . . . . . . . . . . 9

*Maryland v. King*, 113 S.Ct. 1958 (2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . 11

*Missouri v. McNeely*, 133 S. Ct. 1552 (2013).. . . . . . . . . . . . . . . . . . . 3, 10, 12

*Rhodes v. State*, 240 S.W.3d 882 (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . . . 6

*Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000).. . . . . . . . . . . . . . . . . . . 11

*Schmerber v. California*, 384 U.S. 757 (1966). . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989). . . . . . 7, 8

*Vernonia School Dist. 47J v. Acton*, 515 U.S. 646 (1995). . . . . . . . . . . . . . . . . . . . 7

*Villarreal v. State*, __S.W.3d__ No. PD-0306-14, 2014 Tex. Crim. App.
 LEXIS 1898, (Tex. Crim. App. 2014). . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10

*Wilson v. State*, 311 S.W.3d 452 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . 11

*Winston v. Lee*, 470 U.S. 753 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## Statutes

TEX. CODE CRIM. PROC. art. 38.23. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

TEX. PENAL CODE ANN. § 49.045. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

TEX. TRANSP. CODE § 724.011. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

TEX. TRANSP. CODE § 724.012. . . . . . . . . . . . . . . . . . . . . 2-3, 4, 5, 6, 8, 9

TEX. TRANSP. CODE § 724.013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

TEX. TRANSP. CODE § 724.017. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9n

No. PD-1639-14

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS



LOREDANA BERTOLOTTI GORE,                                    Appellant

v.

THE STATE OF TEXAS,                                           Appellee


* * * * *

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

* * * * *

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

The State of Texas, by and through its State Prosecuting Attorney, respectfully urges this Court to grant discretionary review of the above named cause.

## STATEMENT REGARDING ORAL ARGUMENT

The State Prosecuting Attorney requests oral argument. The validity of Texas' mandatory blood draw statute under the Fourth Amendment following *Missouri v. McNeely* merits discussion.

1

## STATEMENT OF THE CASE

Appellant was charged with driving while intoxicated. After the trial court denied her motion to suppress, Appellant pled guilty to the offense. The trial court assessed her punishment at two years of community supervision. The Court of Appeals reversed, holding that the trial court erred by denying the motion to suppress.

## STATEMENT OF PROCEDURAL HISTORY

On November 13, 2014, the Court of Appeals reversed the conviction in a published opinion. *Gore v. State*, __S.W.3d__ No. 01-13-00608-CR (Tex. App.–Houston [1st Dist], 2014). Neither party filed a motion for rehearing. This Court granted the State one extension of time until January14, 2015, to file its petition for discretionary review.

## QUESTIONS FOR REVIEW

**1) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

**2) If a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid?**

**3) Do exigent circumstances permit an officer to obtain a non-consensual blood specimen when he suspects a person of being under the influence of an unknown drug when it typically takes 3- 3 hours to obtain a warrant in his jurisdiction?**

2

## ARGUMENT

**1) Does a warrantless blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

Appellant was arrested for driving while intoxicated with a child passenger. *See* TEX. PENAL CODE ANN. § 49.045. The arresting officer required her to submit to a blood draw pursuant to TEX. TRANSP. CODE § 724.012(b) (mandatory blood draw statute).[1] Citing *Missouri v. McNeely*, 133 S. Ct. 1552 (2013), and recent decisions from other courts of appeals addressing Section 724.012, the court of appeals held that the mandatory blood draw statute was not facially unconstitutional, as it did not require a *warrantless* blood draw. *Gore*, Slip op. at 13-14. However, it held that in the absence of a warrant, a blood draw must meet an exception to the warrant requirement. *Id*. at 23. This Court addressed the validity of warrantless blood draws conducted pursuant to the statute in *Villarreal v. State*, __S.W.3d__ No. PD-0306-14, 2014 Tex. Crim. App. LEXIS 1898 (Tex. Crim. App. 2014), and held that an officer who orders a mandatory specimen in the absence of a search warrant or exception to

---

[1]TEX. TRANSP. CODE § 724.012 (b)(2) allows a peace officer to require the taking of a specimen of the blood of a person arrested under Penal Code Section 49.045 if the person refuses the officer's request to voluntarily provide a specimen.

3

the warrant requirement violates the Fourth Amendment.[2] *Villarreal* is not currently final, because the motion for rehearing is pending.

**a. The mandatory blood draw provision in the statute applies only in the absence of a search warrant.**

The Court of Appeals held that the statute does not require a *warrantless* blood draw. *Gore*, slip op. at 13-14. This is undoubtedly true, because the statute does not mention search warrants. Section 724.012 (b) states, "A peace officer shall require the taking of a specimen of the person's breath or blood...." and sets out certain circumstances. TEX. TRANSP. CODE § 724.013 states, "Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer." Together, these provisions require an officer to force the taking of blood from a defendant under certain circumstances; otherwise, the officer may not require a specimen if the person refuses. Neither provision envisions the possibility of a search warrant. Despite 724.013's explicit prohibition against compelled taking of a specimen outside the parameters of subsection (b), such a seizure is proper with a search warrant. *Beeman v. State*, 86

___

[2] *Villarreal* did not address the facial constitutionality of the statute or whether it purports to dispense with the need for a search warrant. 2014 Tex. Crim. App. LEXIS 1898 at *76. But it did observe that: the statute is silent as to whether a warrant is required; it does not give notice that a warrant is not required; and it does not create a constitutionally valid alternative to the warrant requirement. *Id*. at *69-70, 75.

S.W.3d 613 (Tex. Crim. App. 2002). On the other hand, subsection (b) dictates that the officer must obtain the specimen, presumably even if a magistrate refuses to issue a search warrant.

This Court has held that, "Chapter 724 is inapplicable when there is a search warrant" and that the statute "governs the State's ability to obtain a breath or blood sample from a DWI suspect when there is no warrant." *State v. Johnston*, 336 S.W.3d 649, 660 (Tex. Crim. App. 2011) (citing *Beeman,* 86 S.W.2d at 616). Even if the statute does not explicitly dispense with the need for a warrant, the legislature apparently did not believe that one was necessary if the requirements of subsection (b) were met.

### b. When a defendant drives a vehicle on a public roadway while intoxicated, he gives advance, irrevocable consent and either waives any warrant requirement or is estopped from demanding it.

The Court of Appeals held that, although the State can "condition the right to drive on the consent to a blood draw, it cannot require the waiver of a constitutional right in return. *Gore*, slip op. at 22.

TEX. TRANSP. CODE § 724.011 provides that a person arrested for certain offenses, including driving while intoxicated, is deemed to have consented, subject to chapter 724, to submit to the taking of a specimen of his breath or blood to determine the presence of an intoxicant. As pointed out above, Section 724.013

states that a specimen many not be taken if the person refuses,"[e]xcept as provided by Section 724.012(b)," which mandates that the officer require a specimen under certain narrow circumstances. The Court of Appeals pointed out that in this case, Appellant withdrew any implied consent she had previously given. *Id*. at 23. But because she was driving while intoxicated with a child in the car, she had no right to withdraw that consent.

Therefore, a defendant who exercises the privilege of driving on public roads and is arrested for driving while intoxicated has consented to the taking of his blood, and, if the subsection (b) factors are met, is not entitled to require that police first obtain a warrant or meet any recognized warrant exception. Any post-arrest challenge to the revocability and voluntariness of consent should not be entertained. *Cf. Rhodes v. State*, 240 S.W.3d 882, 891 (Tex. Crim. App. 2007) (the doctrine of estoppel by contract bars a party who accepts the benefits of a contract from complaining about its existence, validity, or effect); *Board of Education v. Earls*, 536 U.S. 822, 828-38 (2002) (sanctioning a mandatory drug-testing policy for students that is a condition of participation in extracurricular activities).

**c. The Fourth Amendment requires only reasonableness; a search warrant or exception is not essential for a search to be reasonable.**

The Court of Appeals erred by holding that a warrantless blood draw must be

based on a well-recognized exception to the Fourth Amendment. *Gore*, slip op. at 33.

"As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is 'reasonableness.'" *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652 (1995).

The Supreme Court has upheld searches on the basis of reasonableness despite the lack of a warrant or any recognized exception to the "warrant requirement." *See, e.g, Maryland v. King*, 113 S. Ct. 1958 (2013) (buccal swab for DNA); *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 652 (1989) (upholding railroad regulations regarding warrantless blood and urine tests for employees after accidents or safety rules violations).

Here, a search that: complies with the statute, is given with advanced, subsequently withdrawn consent, and constitutes a search incident to arrest for evidence of the crime of arrest (see below) is reasonable.

**d. The statute is a codification of the search incident to arrest exception to the warrant requirement for a narrow class of crimes and a blood draw is a reasonable type of search.**

Even if a blood draw must meet a specific search warrant exception, a blood draw conducted pursuant to Section 724.012(b) is a search incident to lawful arrest. The statute requires a specific type of search–a specimen of breath or blood–incident to a narrow class of felony intoxication-related arrests. The scope of the search is

7

tied to the offense of arrest. *Cf. Arizona v. Gant*, 556 U.S. 332, 344, 351 (2009) (a vehicle search incident to arrest is permissible when there is reason to believe that evidence of the offense of arrest could be found in the vehicle). In the case of a blood draw, the search is limited to t he place where the evidence of the offense will be found–the suspect's veins. The only remaining question is whether the intrusiveness of the search at issue is reasonable.

A blood draw is more invasive than a search of a person's clothing or effects, but DWI arrestees have a diminished expectation of privacy. *Compare with Skinner,* 489 U.S. at 624-27 (privacy interests implicated by blood and urine tests are minimal and a railroad employee's expectation of privacy is diminished by participation in an industry that is heavily regulated to ensure safety). And in *Winston v. Lee*, 470 U.S. 753, 760 (1985), although the Supreme Court held that surgery to remove a bullet as evidence of a crime is unreasonably intrusive, it followed the framework in *Schmerber v. California*, 384 U.S. 757 (1966), with regard to the reasonableness of searches that involve bodily intrusions. *Schmerber* found blood draws in general are reasonable based on the routine nature of such tests, the minimal amount of blood taken, and the low risk of trauma or pain from the procedure. *Id.* at 771. It also found reasonable the manner in which the blood was drawn in that case–in a hospital, by

8

medical personnel, and in accordance with accepted medical practices. *Id.*[3]

A blood draw conducted in accordance with Chapter 724 is a reasonable search incident to lawful arrest and is permissible without a warrant.

**2) If a warrantless blood draw conducted pursuant to TEX. TRANS. CODE § 724.012(b) violates the Fourth Amendment, must that evidence be suppressed when, at the time of the search, the statute was presumptively valid and that it dispensed with the warrant requirement?**

The blood draw in this case was conducted before any court had held that the statute violates the Fourth Amendment. At the time of the search, the statute was presumptively constitutional. *See Karnev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise."). So even if this Court determines that the statute is invalid, the blood test results in this case should not be suppressed under either the Federal or Texas exclusionary rules.

**a. Federal Exclusionary Rule**

The Supreme Court has held that the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted objectively reasonably by relying on a statute that was later declared unconstitutional, *Illinois v. Krull*, 480 U.S. 342, 349-57 (1987), or on binding judicial

---

[3]TEX. TRANSP. CODE § 724.017 sets out who may draw blood and where it may be drawn.

precedent that was subsequently overruled. *Davis v. United States*, 131 S. Ct. 2419, 2428-34 (2011).

In addition to the presumptively constitutional mandatory draw statute, before *Villarreal*, this Court had held that the statute "expands on the State's search capabilities by providing a framework for drawing DWI suspects' blood in the absence of a search warrant," and "enabl[es] [officers] to draw blood in certain limited circumstances even without a search warrant." *Beeman,* 86 S.W.3d 616. Prior to *McNeely,* this Court held that that dissipation of alcohol from the blood stream alone constitutes exigency which, combined with probable cause and a reasonable method of drawing blood, does not require a warrant. *Aliff v. State*, 627 S.W.2d 166, 169-70 (Tex. Crim. App. 1982). *Davis* held that it was inappropriate to apply the exclusionary rule to a search that was, at the time, permissible under biding precedent. 131 U.S. at 2424-28.

Here, the officer drew Appellant's blood under the authority of a presumptively valid statute and caselaw interpreting it. Applying the exclusionary rule would not serve the rule's purpose of deterring police misconduct. For purposes of the Fourth Amendment, the good-faith exception prevents suppression.

**b. Texas' Exclusionary Rule**

Suppression is also not justified under Texas' exclusionary rule. TEX. CODE

10

CRIM. PROC. art. 38.23(a) prohibits the use of evidence obtained in violation of the law. But not every violation of the law is subject to exclusion under article 38.23. This Court has not applied the plain meaning of the statute and instead has read into it a requirement that the violation be related "to the purpose of the exclusionary rule or to the prevention of the illegal procurement of evidence of crime." *Wilson v. State*, 311 S.W. 3d 452, 459 (Tex. Crim. App. 2010). In *Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007), the Court held that a person's violation of traffic laws in order to make a citizen's arrest did not implicate article 38.23, noting that "only those acts which violate a person's privacy rights or property interests are subject to the state or federal exclusionary rule." *Id*. at 36, 46. And in *Rocha v. State*, 16 S.W.3d 1, 18-19 (Tex. Crim. App. 2000), the Court held that article 38.23 does not apply to evidence obtained in violation of the Vienna Convention because the treaty is intended to protect nations; it does not create enforceable individual rights.

A similar suppression exemption should be recognized here because the primary purpose of article 38.23 is not furthered when police comply with an existing, presumptively valid statute and case law interpreting it.

**3) Do exigent circumstances permit an officer to obtain a non-consensual blood specimen when he suspects a person of being under the influence of an unknown drug when it typically takes 3- 3 hours to obtain a warrant in his jurisdiction?**

The Court of Appeals held that exigent circumstances were not present in this case even though a prosecutor testified that on a night that is not a "no refusal weekend" it typically takes 2-3 hours to obtain a search warrant from a magistrate in Galveston County. The court of appeals pointed out that the officer believed the statute did not require him to get a warrant, he never discussed with a prosecutor the possibility of getting a warrant, and there was no evidence of how long it would have taken to get a warrant in this particular case. But even assuming it would have taken the officer the full three hours to obtain a warrant, the court held that exigent circumstances were not present because BAC evidence "naturally dissipates over a gradual and relatively predictable manner." *Id.* at 32-33 (citing *McNeely*).

This analysis, however, fails to take into account that the officer suspected Appellant was under the influence of an unknown drug, not just alcohol. An unknown drug does not necessarily have a gradual or predicable rate of elimination from the system. After *McNeely*, Texas courts of appeals have been overly cautious in finding exigent circumstances in blood draw cases, even those involving serious accidents or long delays between the time of arrest and the time investigating officers would have been able to obtain a warrant. The narrow holding of *McNeely* was that

12

the dissipation of alcohol *alone* is not a sufficient per se exigency. It noted that "a significant delay in testing will negatively affect the probative value of the results." 133 S.Ct. at 1561. Its holding did not address a situation like this one, involving a potential delay of three hours and the possibility of an unknown intoxicant. This Court should grant review to address the applicability of *McNeely*'s analysis to a determination of exigent circumstances under these circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the State of Texas prays that the Court of Criminal Appeals grant this Petition for Discretionary Review, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

/s/ LISA C. McMINN

LISA C. McMINN
State Prosecuting Attorney
Bar I.D. No. 13803300

P.O. Box 13046
Austin, Texas 78711
information@spa.texas.gov
512/463-1660 (Telephone)
512/463-5724 (Fax)

14

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that according to the WordPerfect word count tool this document contains 3,507 words.

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 14th day of January, 2015, the State's

Petition for Discretionary Review was served via certified electronic service provider

to:

Allison Lindblade
Assistant Criminal District Attorney
P.O. Box 17254
Galveston, Texas 77552
allison.lindblade@co.galveston.tx.us


Greg Russell
Attorney at Law
711 59th Street
Galveston, Texas 77551
greg@gnrlaw.com

/s/ LISA C. McMINN
LISA C. McMINN
State Prosecuting Attorney

# Appendix



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-13-00608-CR

—————————————

**LOREDANA BERTOLOTTI GORE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 405th District Court
Galveston County, Texas
Trial Court Case No. 12CR1811

# O P I N I O N

After the trial court denied her motion to suppress, appellant, Loredana

Bertolotti Gore, pleaded nolo contendre to driving while intoxicated with a child

passenger.[1]  The trial court, pursuant to a plea bargain, assessed punishment at two years' confinement, suspended the sentence, and placed appellant on community supervision for two years.  In her sole issue on appeal, appellant contends the trial court erred in denying her motion to suppress evidence of her blood alcohol content because her blood was drawn in violation of her Fourth Amendment rights as articulated in *Missouri v. McNeely*, ___U.S.___, 133 S. Ct. 1552 (2013).  We reverse and remand.

## I. BACKGROUND

On the evening of July 4, 2012, appellant was involved in a minor car accident in Friendswood, Texas.  The passenger side of appellant's car was scratched and the mirror of the other car involved was damaged.  No one was injured.

Officer O. McIntyre of the Friendswood Police Department was dispatched to the scene of the accident.  When he arrived, McIntyre first spoke to Officer Haunschild of the League City Police Department, who was already on the scene.  At 11:45 p.m., McIntyre then took over the investigation because the accident had occurred in the Friendswood.  McIntyre spoke with appellant and the other person involved.  When he discovered that there were two children in appellant's car, McIntyre called a family member of appellant's choosing to come pick up the

---

[1]    *See* TEX. PENAL CODE ANN. § 49.045 (Vernon 2011).

children.  It took 10 to 15 minutes for the family member to arrive and another 5 to 10 minutes to load the children into the car.

McIntyre then performed field sobriety tests on appellant, and, based on her performance of those tests, arrested appellant for driving while intoxicated with minor children in the car.  He then read appellant the statutory warnings associated with a blood draw.  Appellant agreed to give a breath sample, but refused a blood draw.  Nevertheless, McIntyre transported appellant to a nearby hospital, where her blood was drawn at approximately 12:34 a.m., approximately 49 minutes after McIntyre began his investigation of the accident.

Regarding his decision to arrest appellant and take a sample of her blood without a warrant and over her objection, McIntyre testified as follows:

Q:  Now, you talked about child passengers.  Were there child passengers on the scene?

A:  Yes, sir.  There was two child—two children inside appellant's vehicle.

Q.  Were there any other adults inside the defendant's vehicle when you arrived on the scene?

A.  No, sir.

Q:  What did you do with the children?

A: I contacted a family member of her choosing to come out and take care of the kids and give them a safe ride to the house.

Q: Did you oversee that transfer?

3

A: Yes, sir.

Q: And did that take any amount of time?

A: It took I would guesstimate, ten to 15 minutes for her to come out and then probably another five to ten minutes to get the kids out of the car, into their car seats, buckled in, so on, so forth.

Q Now, after the—after you arrested the defendant, did you—did you talk to the defendant at all about providing a specimen of breath or blood?

A. Yes, sir. I read her the statutory warning and asked if she would provide a blood specimen.

Q: Did you ask her to provide a breath specimen at all?

A: No, sir.

Q: Under Texas statute, are you aware of whether or not you could determine what type of blood specimen is requested?

A: Yes, sir.

Q: Well, what is that?

A: We are—it's our choosing. We can ask for either breath or blood.

Q: Now, just to be clear, did the defendant agree to provide a breath specimen?

A: Yes, sir, she did.

Q: But did you request a breath specimen?

A: No, sir, I did not.

McIntyre testified that he believed that appellant was "on something" in addition to alcohol, so he wanted a blood sample because the breath sample would

4

only reveal the presence of alcohol. When asked about whether appellant consented to the blood draw, McIntyre testified as follows:

Q: Now—and I forgot: Did she consent to give the blood specimen?

A: No, sir.

Q: So what did you do then?

A: Then I placed her in handcuffs under arrest. I determined that since the mandatory blood statutes at the time dictated that a mandatory blood draw was warranted, she was transported from there to the hospital [where her blood was drawn at 12:34 a.m.].

When asked why he did not attempt to get a warrant, McIntyre testified as follows:

Q: Okay, Officer McIntyre, at the time of your arrest, isn't it true that you did not believe that you had to get a search warrant on this kind of a case? Is that true?

A: Yes, sir.

Q: And you discussed this particular arrest with the assistant district attorney; is that correct?

A: Yes, sir.

Q: And did you at any time request that a search warrant be issued for the drugs?

A: No, sir.

Q: All right. And, therefore, you never made any kind of an effort to get a search warrant in this particular case; is that correct?

A: No, sir.

Q: And isn't it further true that you did not make any effort to determine if a search warrant was needed in this particular case?

5

A: I just based it off of what the law said at the time.

Q: All right. There was no other emergencies pending at this particular time, was there?

A: What do you mean by "emergencies"?

Q: Well, as far as a—was there anybody hurt in that particular accident?

A: No, sir.

Q: Did anyone need any kind of medical services?

A: No, sir.

Q: Are you aware that the natural actions of the body, metabolism of the body, as to drug and alcohol dissipates over time?

A: Yes, sir. It does.

Q: All right. And you did believe that the law permitted you, the transportation code, to get, in this kind of a case, a blood draw; is that correct?

A: Yes, sir.

Q: All right. And the defendant specifically requested no blood draw be taken from her; is that correct?

A: Yes, sir.

McIntyre further testified that he had never gotten a warrant to draw someone's blood in *Galveston* County except on a "no-refusal weekends,"[2] which

---

[2] On no-refusal weekends, which this was not, magistrates are on stand-by to sign warrants.

this particular weekend was not. He testified that, in his experience, it would take two to four hours to get a warrant in *Harris* County.

At the suppression hearing, Bill Reed, the Galveston County Special Crimes Chief Prosecutor, testified that for the past 13 years he has been the "on-call" prosecutor for one week each month, and that "we could get search warrants and/or arrest warrants in the middle of the night." Reed said that there were 13 judges available in Galveston County to sign warrants and that it usually takes two to three hours to get a warrant.

Finally, Severo Lopez, a section supervisor for the drug and alcohol section of the Texas Department of Public Safety, testified that the average rate of elimination of alcohol in the human body is approximately .02 grams per deciliter per hour.

## II. MOTION TO SUPPRESS

In her sole issue on appeal, appellant contends the trial court erred in denying her motion to suppress, in which she alleged that the seizure of her blood violated her Fourth Amendment rights because (1) it was done without a warrant, and (2) without her consent. The State responds that two exceptions to the warrant requirement are present here—consent and exigent circumstances. Specifically, the State contends that "consent is satisfied by the mandatory blood draw provision, and exigent circumstances are demonstrated by the facts of this case."

## A. Standard of Review

We evaluate a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). The trial judge is the sole trier of fact and judge of the weight and credibility of the evidence and testimony. *Weide v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Accordingly, we defer to the trial court's determination of historical facts if the record supports them. *Ford*, 158 S.W.3d at 493. We review de novo the trial court's application of the law to those facts. *Id.* "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). A trial court's ruling will be sustained if it is "reasonably supported by the record and correct on any theory of law applicable to the case." *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003) (quoting *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002)).

On a motion to suppress, the defendant bears the initial burden of producing some evidence that rebuts the presumption of proper police conduct. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013); *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). However, once the defendant establishes the absence of a warrant, the burden shifts to the State to prove the warrantless search

8

in question was reasonable under the totality of the circumstances. *Amador*, 221 S.W.3d at 672–73. This burden may be satisfied by proving the existence of an exception to the warrant requirement. *See Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). The Court of Criminal Appeals has held "[t]here is a strong preference for searches to be administered pursuant to a warrant." *Id.*

## B. Supreme Court Authority on Blood Draws

In *Schmerber v. California*, the United States Supreme Court upheld a warrantless blood draw in a DUI case under the exigent circumstances exception to the warrant requirement. 384 U.S. 757, 770, 86 S. Ct. 1826, 1836 (1966). The driver and his companion had both sustained injuries, and the Court found that exigent circumstances were present, "[p]articularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident[,]" and the delay necessary to obtain a warrant threatened the destruction of evidence because "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." *Id*. at 770–71.

Last year, however, the Supreme Court clarified that *Schmerber* did not create a *per se* exigency exempting blood alcohol tests from the warrant requirement. *Missouri v. McNeely*, __U.S.__, 133 S. Ct. 1552, 1556 (2013). Instead, the court concluded that the exigency must be determined based on the

totality of the circumstances, and that the metabolization of alcohol was but one of the factors to be considered in evaluating whether the circumstances were exigent. *Id.* at 1559, 1563. The Court held that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561. The Court found it significant that technological innovations may make it possible to obtain a warrant without causing significant delay in the drawing of the blood of the accused. *Id.* at 1561–63.

The Supreme Court did not specifically address the constitutionality of mandatory blood draw statutes, either facially or as applied, but, shortly after it issued *McNeely*, the Supreme Court vacated and remanded *Aviles v. Texas*, 385 S.W.3d 110 (Tex. App.—San Antonio 2012, pet. denied), *vacated*, 134 S. Ct. 902 (2014), "for further consideration in light of *Missouri v. McNeely*, 569 U.S. __, 133 S. Ct. 1552, 185 L.Ed.2d 696 (2013)." In *Aviles*, the court of appeals had upheld a warrantless blood draw, holding that Texas' implied consent statute,[3] coupled with its mandatory blood draw statute,[4] eliminated the necessity for a warrant and the warrantless blood draw was done "without violating Aviles's Fourth Amendment Rights." 385 S.W.3d at 116. Essentially, the court of appeal in *Aviles* had held that

---

[3]      *See* TEX. TRANSP. CODE ANN. § 724.011 (Vernon 2011).
[4]      *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011).

compliance with the mandatory blood draw statute was an exception to the Fourth Amendment's warrant requirement. *See id.*

## C. Consent

The issue this Court must consider is the effect that *McNeely* has on the State's implied consent and mandatory blood draw statutes.

### *1. The Implied Consent/Mandatory Blood Draw Statutes*

The applicable statutes provide as follows:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . while intoxicated . . . the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011 (hereinafter, "the implied consent statute").

> A peace office shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily:
> . . . .
> > (2) the offense for which the officer arrests the person is an offense under Section 49.045, Penal Code[.][5]

---

[5] Section 49.045 of the Penal Code provides that "A person commits an offense if (1) the person is intoxicated while operating a motor vehicle in a public place; and (2) the vehicle being operated by the person is occupied by a passenger who is younger than 15 years of age." TEX. PENAL CODE ANN. § 49.045(a)(1) (Vernon 2011). The offense described is a state jail felony. *Id.* at §49.045(b).

11

TEX. TRANSP. CODE ANN. § 724.012(b)(2) (hereinafter, "the mandatory blood draw statute").

> Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.

TEX. TRANSP. CODE ANN. § 724.013.

## 2. Constitutionality of Implied Consent

### a. Facial Constitutionality

There are two types of challenges to the constitutionality of a statute: as applied or facial. *See Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2009) (Cochran, J., concurring) ("A facial challenge is based solely upon the face of the penal statute and the charging instrument, while an applied challenge depends upon the evidence adduced at a trial or hearing."). Appellant argues that the mandatory blood draw statute "creates a *per se* rule that no warrant is required to conduct a blood draw in [a] felony DWI case." This appears to be a challenge to the facial constitutionality of section 724.012(b). In a facial challenge to a statute's constitutionality, we examine the statute as it is written, rather than how it is applied in a particular case. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). To prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013).

In *McGruder v. State*, ___S.W.3d___, No. 10-13-00109-CR, 2014 WL 3973089, at *3 (Tex. App.—Waco Aug. 14, 2014, pet. filed), the defendant argued that section 724.012 was facially unconstitutional. The court disagreed, stating

> Section 724.012(b) merely requires an officer to take a blood or breath specimen in certain circumstances. What makes the statute mandatory is that the officer has no discretion in those situations to obtain either a blood or a breath specimen. It does not mandate, nor does it purport to authorize, a specimen be taken without compliance with the Fourth Amendment. And although the Court of Criminal Appeals has said that the implied consent law, the body of law in which this particular statute is contained, enables officers to draw blood in certain limited circumstances, *a.k.a.* exigent circumstances, even without a search warrant, the Court also said that the law did not give officers the ability to forcibly obtain blood samples from anyone just because they were arrested for DWI. *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002). Further, the Court did not hold in *Beeman,* and has not yet held, that section 724.012(b) is an exception to the Fourth Amendment's warrant requirement such as the consent exception or the exigent circumstances exception. (Citation omitted).

> Further, as written, section 724.012(b) does not require a blood or breath specimen to be taken contrary to the Fourth Amendment; that is, without a warrant or without a recognized exception to the warrant requirement. (Citation omitted). We agree with the Houston Court of Appeals when it aptly noted, "We have no reason to fault the constitutionality of the mandatory blood draw statute in this case because it did not require [the officer] to obtain a blood draw without first securing a warrant. It is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory nature of the blood draw statute, that violate the Fourth Amendment." *Douds v. State,* 434 S.W.3d 842, 861 (Tex. App.—Houston [14th Dist.] 2014, pet. [granted]) (op. on rh'g) (publish).

*Id.* We agree with the *McGruder* court that section 2014 is not facially unconstitutional. While the statute does make a blood draw without consent

13

mandatory in certain circumstances, it does not mandate a blood draw without a warrant. Thus, a nonconsensual blood draw, with a warrant, would not be constitutionally infirm. As such, we overrule appellant's claim that the statute is facially unconstitutional; it does not "create[] a *per se* rule that no warrant is required to conduct a blood draw in felony DWI case[s]."

### b. *"As Applied" Constitutionality*

Appellant also claims that the blood draw statute is unconstitutional when applied to her because no warrant was obtained and it was done without her consent. The State responds that "[u]nder certain, narrowly tailored circumstances involving cases of particular import to the safety of the public, a person who has chosen to operate a motor vehicle in public while intoxicated impliedly consents to having the person's blood drawn by appropriately qualified medical personnel[,] [a]nd when the situation falls within the provisions of §724.012, the person may not revoke their consent." Several Texas appellate courts have grappled with this issue.

On remand from the Supreme Court "for further consideration in light of *Missouri v. McNeely*," the San Antonio Court of Appeals reconsidered its previous holding in *Avilas* that a warrantless blood draw conducted pursuant to section 724.012 did not violate the defendant's rights under the Fourth Amendment, holding instead on remand that "neither the mandatory blood draw statute nor the

14

implied consent statute were exceptions to the Fourth Amendment's warrant requirement. *Avilas v. State*, ___S.W.3d___, No. 04-11-00877-CR, 2014 WL 3843756, at *2 (Tex. App.—San Antonio Aug. 6, 2014, pet. filed). In so holding, the *Avilas* court relied on another case from San Antonio, *Weems v. State*, 434 S.W.3d 655, 665 (Tex. App.—San Antonio 2014, pet. granted). In *Weems*, the court of appeals concluded that, as applied to a defendant whose blood was taken without a warrant or other warrant exception, application of section 724.012 creates a categorical, *per se* exception to the warrant requirement, and that such *per se* exceptions run afoul *McNeely*, which requires a consideration of the particular circumstances of each case. *Id.* at 664. In so holding, the *Weems* court stated, "We conclude that McNeely's prohibition on *per se*, categorical exceptions to the Fourth Amendment's warrant requirement did not solely apply to the exigency exception, but also applies to the facts presented in *Aviles*[,]" and that "the implied consent and mandatory blood draw statutes are not exceptions to the Fourth Amendment's warrant requirement." *Id*. at 664, 665.

Indeed, several Texas appellate courts have held that the implied consent statutes do not create an exception to the warrant requirement. *Weems*, 434 S.W.3d at 665 (concluding that the remand of *Aviles* indicated that the implied consent statute was not in itself an exception to the warrant requirement); *Reeder v. State*, 428 S.W.3d 924, 930 (Tex. App.—Texarkana 2014, pet. granted) ("[I]n the

15

absence of a warrant or exigent circumstances, taking Reeder's blood pursuant to Section 724.012(b)(3)(B) of the Texas Transportation Code violated his Fourth Amendment rights."); *Sutherland v. State*, 436 S.W.3d 28, 38 (Tex. App.—Amarillo 2014, pet. filed) ("[I]t would seem that the position advanced in *Aviles* that the Texas Transportation Code's implied-consent provision applies to justify the warrantless mandatory blood draw of Section 724.012(b)(3)(B) is also constitutionally infirm."); *see also State v. Villarreal*, ___S .W.3d___, No. 13–13–00253–CR, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014, pet. granted) (accepting the State's concession that there was no consent and concluding that "the constitutionality of the repeat offender provision of the mandatory blood draw law must be based on the previously recognized exceptions to the Fourth Amendment's warrant requirement"); *see also Gentry v. State*, No. 12-13-00168-CR, 2014 WL 4215544, at *4 (Tex. App.—Tyler Aug. 27, 2014, pet. filed) (holding "the implied consent and mandatory blood draw statutory schemes found in the transportation code are not exceptions to the warrant requirement under the Fourth Amendment[.]")

The Beaumont court of appeals has recently joined the courts mentioned above in concluding that the implied consent/mandatory blood draw statutes do not provide a recognized exception to the warrant requirement of the Fourth Amendment. *See State v. Anderson*, ___S.W.3d___, No. 09-13-00400-CR, 2014

16

WL 5033262, at *10 (Tex. App.—Beaumont Oct. 8, 2014, no pet. h.). In so

holding, the court stated:

> [A]s applied in this case, the State's overly broad argument regarding
> the application of section 724.012(b) would extinguish a right granted
> by the United States Constitution. While the Texas Legislature can
> grant greater or more expansive rights than those contained in the
> United States Constitution, it cannot extinguish the protections and
> rights guaranteed by the Constitution.

*Id.*

The Eastland court of appeals has specifically addressed an issue raised by

the State in this case, i.e., that once the conditions of section 724.012(b) are met, a

defendant's implied consent becomes irrevocable. *See Forsyth v. State*, 438

S.W.3d 216, 222 (Tex. App.—Eastland 2014, pet. ref'd). In *Forsyth*, the court,

citing *Florida v. Jimeno*, 500 U.S. 248, 252, 111 S. Ct. 1801 (1991), noted that a

defendant may delimit the scope of the search to which she has consented. *See*

*also Mason v. Pulliam*, 557 F.2d 426, 428–29 (5th Cir. 1977) (holding that consent

may be limited, qualified, or withdrawn). The court concluded that when, as here,

the defendant specifically refuses to consent to the blood draw, any implied

consent failed to meet Fourth Amendment standards.

> When a person refuses to submit, we can see no way to legitimately
> find that the suspect consented to the mandatory blood draw
> voluntarily. Thus, regardless of whether the Transportation Code
> forecloses a suspect's ability to legally withdraw implied consent, a
> person cannot be said to have consented for the purpose of satisfying
> the voluntary consent exception to the warrant requirement. (Citation
> omitted).

17

* * * *

> For consent to search to be valid as an exception to the warrant requirement, the consent must be given voluntarily, without coercion by threats or force and not as the result of duress. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 224–25, 229, 233, 248, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973). Moreover, when the State seeks to rely upon consent to justify a warrantless search, the State has the burden of proving that the consent was freely and voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968). The State cannot meet this burden when the suspect has refused to give a specimen of breath or blood because the suspect has clearly not given consent freely and voluntarily. The suspect may very well acquiesce to the officer's authority and allow medical personnel to draw his or her blood; however, mere acquiescence to a claim of lawful authority does not discharge the burden imposed upon the State to show that the suspect freely and voluntarily consented. *See id.* at 548–49, 88 S. Ct. 1788. We decline to hold that implied consent under the Transportation Code is the equivalent to voluntary consent as a recognized exception to the warrant requirement.

*Id.* at 222–23. Indeed, the high courts of several other States have held that an implied consent that cannot be revoked fails to meet the standard for consent required by the Fourth Amendment. *See Byars v. State*, ___P.3d___, 2014 WL 530892, at *4, 6 (Nev. Oct. 16, 2014) (holding "a necessary element of consent is the ability to limit or revoke it," thus "[Nevada's implied consent statute] does not overcome the statute's infirmity because the statute does not allow a driver to withdraw consent, thus a driver's so-called consent cannot be considered voluntary."); *State v. Wells*, 2014 WL 49777356, at *13 (Tenn. Crim. App. Oct. 6, 2014) (holding that implied consent law is consent to testing or to accept consequences of refusal, i.e., loss of license, not consent for forcible blood draw);

18

*State v. Fierro*, 853 N.W.2d 235, 241 (S.D. 2014) (holding that irrevocable consent pursuant to implied consent statute did not meet consent requirements of Fourth Amendment).

The State also argues that "[a]ccording to the plurality [in *McNeely*], warrantless, nonconsensual blood draws remain permissible." This argument is a reference to a plurality portion of the *McNeely* opinion in which Justice Sotomayor mentioned implied consent statutes. Justice Sotomayor, joined by Justices Scalia, Ginsburg, and Kagan, Justice Sotomayor, noted that states have "a broad range of legal tools to enforce their drunk-driving laws and to secure BAC [blood alcohol content] without undertaking warrantless nonconsensual blood draws." *Id*. at 1566. As an example, the plurality recognized that all fifty states "have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the [s]tate, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense." *Id.* "Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's license is immediately suspended or revoked, and most [s]tates allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent prosecution." *Id.*

A few courts have discussed the import of Justice Sotomayor's comments on the necessity for warrants in states with implied consent laws. In *Anderson*, the

19

Beaumont court of appeals addressed an argument identical to that made by the State here, i.e., that the plurality's mention of implied consent laws as a "legal tool[] to enforce their drunk-driving laws and to secure BAC" means that implied consent laws provide a lawful method for a warrantless blood draw. The *Anderson* court points out that the *McNeely* plurality actually states that implied consent statutes provide "a broad range of legal tools to enforce [a State's] drunk driving laws and to secure BAC evidence *without undertaking warrantless nonconsensual blood draws*." 2014 WL 5033262, at *10 (quoting *McNeeley*, 133 S. Ct. at 1566 (plurality opinion) (emphasis added)). And, the Tennessee Court of Criminal Appeals has noted that Justice Sotomayor's plurality points out that implied consent laws "impose significant consequences *when a motorist withdraws consent*; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist refusal to take a BAC to be used as evidence against him in a subsequent criminal prosecution." *Wells*, 2014 WL 4977356, at *13 (*quoting McNeely*, 133 S. Ct. at 1566 (plurality opinion) (emphasis added)).

We agree with the *Anderson* and *Wells* courts and conclude that Justice Sotomayor's plurality opinion does not provide support for the State's position. The plurality opinion points out that implied consent laws are another tool for obtaining BAC evidence; it does not, however, hold that such laws authorize

20

warrantless nonconsensual blood draws. Instead, it points out that defendants may consent to avoid the penalties of noncompliance such as the loss of a driver's licence. Similarly, the plurality opinion supports the position that consent provided under these statutes can be withdrawn.

The State in this case argues that "[t]he acceptance of a driver's license is conditioned upon the implied consent for providing a blood sample or a waiver of the warrant requirement in certain circumstances." Essentially, the State argues that in order to obtain the privilege of driving in Texas, one must give up one's Fourth Amendment right to be free from warrantless searches in certain circumstances.

The Supreme Court considered this issue in another context. In *Frost v. Railroad Comm'n of Ca.*, 271 U.S. 583, 593, 46 S. Ct. 605, 607 (1926), the Supreme Court considered a statute that required a private carrier, in order to have the privilege of using California highways, to submit to regulations applicable to common carriers. The Supreme Court had already held that private carriers could not be converted to common carriers against their will, and in *Frost*, further held that legislation conditioned on the waiver of that constitutional right could not stand. *Id.* In so holding, the Court stated:

> [A]s a general rule, the state, having power to deny a privilege altogether, may grant it upon such conditions as it sees fit to impose. But the power of the state in that respect is not unlimited, and one of the limitations is that it may not impose conditions which require the

21

> relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guaranties embedded in the Constitution of the United States may thus be manipulated out of existence.

*Id.* The same reasoning is applicable in this case. While the State certainly has the ability to condition the right to drive on consent to a blood draw, it cannot require the waiver of a constitutional right in return. One may be asked to relinquish the privilege of driving as a result of the failure to consent, but one may not be asked to relinquish other constitutionally guaranteed rights. *See also So. Pac. Co. v. Denton*, 146 U.S. 202, 207, 13 S. Ct. 44, 46 (1892) ("But that statute requiring the corporation, as a condition precedent to obtaining a permit to do business within the State, to surrender a right and privilege secured to it by the constitution and laws of the United States, was unconstitutional and void[.]").

### 3. Conclusions Regarding Consent

From our review of the above-references cases we reach the following conclusions about consent to blood draws after *McNeeley*. First, the Texas implied consent/mandatory blood draw statutes are not facially unconstitutional because, while they do mandate the drawing of blood under certain circumstances, they do not require that the blood be drawn without a warrant. Second, application of the statutes may be unconstitutional, as applied to a defendant whose blood is drawn without a warrant or another exception to the warrant requirement, because (1)

22

*McNeeley* forbids categorical, *per se* exceptions to the warrant requirement, and that application of section 724.012 creates such a categorical, *per se* exception to the warrant requirement as applied; (2) implied consent that cannot be withdrawn does not meet the requirements for voluntary consent under the Fourth Amendment; and (3) the State cannot condition the exercise of a privilege granted by the State upon the waiver of constitutional rights.

In this case, it is undisputed that appellant withdrew any implied consent that she may have given at the time she obtained her driver's license and affirmatively refused to give consent for the warrantless blood draw. For the reasons given above, the State's warrantless search may not be premised on the consent exception to the warrant requirement. Thus, the State must come forth with some other recognized exception to the warrant requirement.

## D. Exigency

The State also argues that the exigency exception to the warrant requirement justifies the warrantless blood draw because "there wasn't enough time to get a warrant."

### 1. *Schmerber & McNeely*

The Supreme Court first considered the exigency exception to the warrant requirement for DWI cases in *Schmerber*, 384 U.S. at 758, 86 S. Ct. at 1829, a case in which a defendant was arrested at the hospital while receiving treatment for

injuries sustained in an accident. The defendant was arrested within two hours of the accident. *Id.* at 769, 86 S. Ct. at 1835. The Supreme Court acknowledged "[t]he importance of informed, detached and deliberate determinations of the issue of whether or not to invade another's body in search of evidence of guilt is indisputable and great[,]" but nonetheless found the warrantless blood draw in *Schmerber* to be constitutional, stating:

> The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened "the destruction of evidence." *Preston v. United States*, 376 U.S. 364, 367, 84 S. Ct. 881, 883, 11 L.Ed.2d 777 (1964). We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to petitioner's arrest.

384 U.S. at 770–71, 86 S. Ct. 1835–36.

The *McNeely* court did not overrule *Schmerber*; it merely held that exigency must be determined on a case-by-case basis, and that the metabolization of alcohol did not create a *per se* situation of exigency. The Court did, however, provide some indication of other factors that might also be considered. The Court noted that "a significant delay in testing will negatively affect the probative value of the results" and that, in *Schmerber*, "further delay in order to secure a warrant after the

24

time spent investigating the scene of the accident and transporting the injured suspect to the hospital would have threatened the destruction of evidence." 133 S. Ct. at 1561 (citing *Schmerber*, 384 U.S. at 770–71, 86 S. Ct. 1835–36.) "We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* However, the court noted that blood testing situations did not present a true "now or never" case of evidence destruction because blood alcohol "dissipates over time in a gradual and relatively predictable manner." *Id.* The Court agreed that "exigent circumstances justifying a warrantless blood samples may arise in the regular course of law enforcement due to delays from the warrant application process[,]" *id.* at 1563, but also noted that "some delay between the time of the arrest or accident at the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." *Id.* at 1561. The court noted that the presence of multiple officers at the scene could be one situation in which circumstances would not warrant a finding of exigency.

> Consider, for example, a situation in which the warrant process will not significantly increase the delay before the blood test in conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer. In such circumstance, there would be no plausible justification for an exception to the warrant requirement.

25

*Id.* The Court also noted that, since *Schmerber*, technological advances have streamlined the process of obtaining warrants, and, as such "are relevant to an assessment of exigency." *Id*. at 1562–63.

2. *Texas Exigency Cases Since McNeely*

Several Texas courts of appeals have considered the exigency exception in the context of DWI's since *McNeely*. In *Sutherland*, 436 S.W.3d at 31, the defendant was stopped by police at 11:30 p.m. after he changed lanes without signaling. The police officer performed field sobriety tests, arrested the defendant at 11:54 p.m. based on his performance of tests, and asked the defendant to take a breath test, which the defendant refused. *Id.* The officer then received information that the defendant had two previous DWI convictions, so, in reliance on section 724.012(b) of the Transporation Code, the officer took the defendant to the jail, where his blood was drawn without his consent at 12:48 a.m. *Id.* At the hearing on appellant's motion to suppress, the officer admitted that there was no accident, no medical emergency and no need for medical treatment by any person. *Id*. at 32. There was also evidence that a magistrate and phlebotomist were both available 24-hours-a-day at the booking facility, but that the State never sought a warrant in the case. *Id*. The court concluded that the State had not shown exigency because the arresting officer "did not describe any factors that would suggest he was confronted with an emergency or any unusual delay in securing a warrant[,]" and

26

that "he made no effort to obtain a warrant because he believed that the law required that he obtain a blood sample under the circumstances presented to him." *Id.* at 40. The court noted that "procedures in place at the Travis County central booking facility have been implemented to streamline the warrant application process[,]" and that "the arresting officer was not faced with exigent circumstances such that the natural dissipation of alcohol from appellant's bloodsteam would support a warrantless seizure of appellant's blood." *Id.* at 40, 41.

In *Weems*, the defendant was discovered near the scene of a car crash hiding underneath a car. 434 S.W.3d at 658. He was arrested and refused to provide a breath or blood specimen, so he was taken to a hospital, where blood was drawn without his consent. *Id.* The officer "testified that a mandatory blood draw was taken because Weems was driving a car involved in a crash and the passenger was injured." *Id.* Two to three hours passed between the time of the crash and the time the specimen was taken. *Id.* Even though there had been an accident, the passenger had been injured, and the defendant had been transported to the hospital, the court found that no exigency was shown by the State. The court noted that the officer had made no effort to obtain a warrant. *Id.* at 666. The court also noted that the record contained no "other factors that would be relevant under the circumstances, including 'procedures in place for obtaining a warrant or the availability of a magistrate judge' and 'the practical problems of obtaining a warrant with a

27

timeframe that still preserves the opportunity to obtain reliable evidence.'" *Id.* (citing *McNeely*, 133 S. Ct. at 1568).

In *Forsyth*, the police stopped the defendant for failing to signal a turn. 438 S.W.3d at 218. After the defendant failed her field sobriety tests, she was arrested and a criminal history check revealed two prior DWI convictions. *Id.* at 219. After the defendant refused to submit a breath or blood sample, she was transferred to a hospital ten minutes away for a mandatory blood draw, which was taken approximately 30 to 45 minutes after arriving at the hospital. *Id.* The officer testified that "[o]n average, from the time of the stop to the time blood is drawn, it takes two hours to get a blood draw with a warrant[,] and that "it is always faster to get a blood draw without a warrant than it is with a warrant." *Id.* The court found no exigent circumstances, stating:

> In this case, the trial court found that there were no exigent circumstances beyond the natural dissipation of alcohol in Appellant's bloodstream. Although Sergeant Kreger testified that in certain situations an officer may have to wait over one and one-half hours for a warrant, there was no evidence presented by the State in this particular case of how long Officer McDaniel would have had to wait on a warrant. Because the State failed to present evidence of any other exigent circumstances beyond the natural dissipation of alcohol in Appellant's bloodstream, we cannot uphold the trial court's ruling on the ground that exigent circumstances existed.

*Id*. at 220.

Most recently, the Fourteenth Court of Appeals has considered the exigency exception in an *en banc* opinion. *See Douds v. State*, 434 S.W.3d 842 (Tex.

28

App.—Houston [14th Dist.] 2014, pet. granted). In *Douds*, Officer Tran responded to a two-car accident at 2:33 a.m. *Id.* at 845. Another officer and EMS were already at the scene. *Id.* Officer Tran believed that appellant's wife needed to be "checked out," and her friends in the second car stated, "we're taking her." *Id.* After failing field sobriety tests, appellant was arrested at 3:19 a.m. and taken to the police department, arriving at 3:33 a.m. *Id.* After appellant refused to provide a breath sample and believing that appellant's wife had been injured, Officer Tran took appellant to a medical center for a mandatory blood draw; which was accomplished at 4:45 a.m. *Id.* On appeal, the State argued that "under *Schmerber*, the time an officer takes to conduct an accident investigation in a suspected DWI case will provide exigent circumstances authorizing a blood draw without a warrant." *Id.* at 851. The court noted that "courts must focus on whether the State showed that police could not reasonably obtain a warrant, *id.* at 853, and that "[t]he relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood alcohol test." *Id.* at 854. As such, the court concluded that an accident investigation, without more, would not support a warrantless blood draw based on exigent circumstances. *Id.* The court, after examining the record in favor of the trial court's ruling, found no exigent

29

circumstances because (1) nothing in the record mentioned what the officer knew about the time needed to obtain a warrant; (2) there was no evidence addressing whether another officer could have begun the process of obtaining a warrant; (3) an unexplained delay between the arrest and the blood draw negated any inference that time was of the essence in obtaining a blood sample; and (4) the officer did not testify that, in his judgment, the time he spent investigating the warrant would have threatened the destruction of appellant's blood alcohol concentration. *Id.* at 855–56.

*3. Analysis*

With these cases in mind, we consider the relevant facts in this case. There was a minor accident, but it involved no injuries—only scratches to appellant's passenger door and the other car's mirror. Two children were in appellant's car, but, according to Officer McIntyre, it took at most 25 minutes to get them transferred to a relative's custody. There was at least one officer from a different police department already on the scene when Officer McIntyre arrived. Even though Officer McIntyre discussed the arrest with an assistant district attorney, he never made any attempt to get a search warrant, believing that section 724.012(b) authorized the warrantless blood draw.

> Q: Okay. Officer McIntyre, at the time of your arrest, isn't it true that you did not believe that you had to get a search warrant on this kind of a case? Is that true?

A: Yes, sir.

Q: And you discussed this particular arrest with the assistant district attorney; is that correct?

A: Yes, sir.

Q: And did you at any time request that a search warrant be issued for the drugs?

A: No, sir.

Q: All right. And, therefore, you never made any kind of effort to get a search warrant in this particular case; is that correct?

A: No, sir.

Q: And, isn't it further true that you did not make any effort to determine if a search warrant was needed in this particular case?

A: I just based it off of what the law said at that time.

Officer McIntyre had never gotten a search warrant in Galveston County except on no-refusal weekends. In his experience usually took two to four hours to get a search warrant in Harris County.

Bill Reed, an assistant district attorney in Galveston County testified about his experience in getting a warrant at night when it was not a no-refusal weekend.

Q: Now, that whole process of getting the warrant approved by the D.A.'s office and then finding a judge, waking up a judge, and getting a judge to go sign the warrant—how long does that generally take?

A: I would say—from the time of arrest, I would say it would take two to three hours.

Reed did not testify that he was the assistant district attorney that McIntyre had talked to on the night of the arrest or that they had discussed how difficult it would be to get a warrant in that particular case. Reed also testified that there were at least 13 magistrates who could sign warrants in Galveston County.

McIntyre began his investigation at 11:45 p.m. and appellant's blood was involuntarily drawn 49 minutes later at 12:34. There were at least two officers on the scene, and, at most a 25-minute delay while facilitating the transfer of custody of the children. There is no explanation of why both officers were affected by the delay. There is no discussion of why Officer McIntyre felt he did not have time to get a warrant; instead the record makes clear that he did not believe he needed a warrant. Although McIntyre discussed the arrest with an assistant district attorney, the two did not discuss a warrant. Having discussed the case with McIntyre, it would seem that the assistant district attorney could have begun the process of obtaining a warrant while McIntyre continued with his investigation and arrest. Other that Mr. Reed's testimony that in his experience it would take two to three hours to "wake up a judge" and get a warrant, there is no evidence of whether that would have been true in this particular case or that it had been difficult to find one of the 13 judges available in the county that night. To accept Reed's testimony that it usually takes two to three hours to get a warrant as sufficient evidence of exigency in every DWI case would be to create a *per se* exigency rule, which

*McNeely* expressly prohibits. Nothing else in the record explains why Officer McIntyre did not have time to get a warrant before the evidence was destroyed, especially, when, as noted by the *McNeely* court, "BAC evidence from a drunk-driving suspect naturally dissipates over time *in a gradual and relatively predictable manner*." 133 S. Ct. at 1561 (emphasis added). Even if McIntyre had to wait the maximum estimated three hours for a warrant, it is likely that the BAC evidence would have nonetheless been available in light of its "predictable manner" of dissipation.[6] After implying all finding of historical facts in favor of the trial court's ruling, we conclude that these facts do not support an objectively reasonable conclusion that obtaining a warrant was impractical. *See Douds*, 434 S.W.3d at 861. For this reason, the State's warrantless search may not be premised on the exigency exception to the warrant requirement.

### III. CONCLUSION

A warrantless blood draw, unless performed with consent, exigency, or some other recognized warrant exception, violates a defendant's Fourth Amendment rights. Because the State did not carry its burden to show that its warrantless search was authorized by either the consent or exigency exceptions to the warrant requirement, the trial court erred in denying appellant's motion to suppress. We

---

[6] In this case, Severo Lopez, section supervisor for the drug and alcohol section of the Texas Department of Public Safety Crime Laboratory testified that in the case of a three hour delay, the average metabolized alcohol would be around 0.06 grams per deciliter.

further conclude that the erroneous denial of the motion to suppress contributed to appellant's guilty plea. *See Holmes v. State*, 323 S.W.3d 163, 173–74 (Tex. Crim. App. 2009); *Kraft v. State*, 762 S.W.2d 612, 614–15 (Tex. Crim. App. 1988). Accordingly, we reverse the trial court's judgment and remand for further proceedings.

Sherry Radack<br>
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).