**Opinion issued March 17, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01001-CR

————————————

**ANTONIO RUIZ PEREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1309538**

---

**OPINION ON REHEARING**

Appellant, Antonio Ruiz Perez, moved for rehearing of our March 11, 2014

opinion. We grant rehearing, withdraw the opinion and judgment dated March 11,

2014, and issue this opinion and judgment in their stead.[1] Appellant's motion for en banc reconsideration is dismissed as moot.

A jury convicted appellant of driving while intoxicated ("DWI"), third offense, and the trial court assessed his punishment at twenty-five years' confinement. In two points of error, appellant argues that the trial court erred in denying his motion to suppress because: (1) the arresting officer lacked probable cause to arrest him without a warrant and (2) the warrantless taking of his blood sample violated his rights under the Fourth Amendment.

We reverse and remand.

## Background

At approximately 11:50 p.m. on June 10, 2011, Officer B. McCandless observed a red Corvette failing to maintain a single marked lane and followed it for several miles. After observing further unsafe driving, Officer McCandless initiated a traffic stop, and the Corvette exited the highway and stopped in the outside lane of the service road. Upon approaching the Corvette, Officer McCandless observed that appellant was the driver and that a strong odor of alcohol was coming from the vehicle. Officer McCandless testified that appellant stated that he had been

---

[1] After our original consideration of this case, the Court of Criminal Appeals decided *State v. Villarreal*, —S.W.3d—, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) (motion for reh'g granted) and this Court decided *Gore v. State*, 451 S.W.3d 182 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). We invited supplemental briefing from the parties in light of these cases, but no supplemental briefs were filed.

2

drinking, so he administered the horizontal gaze nystagmus ("HGN") test and determined that appellant showed signs of intoxication. Officer McCandless detained appellant and decided to conduct additional sobriety testing in a safer environment. However, appellant refused to provide a breath specimen.

Pursuant to his detention of appellant, Officer McCandless obtained appellant's criminal history through the station's dispatch system and determined that appellant had two prior DWI convictions. Officer McCandless then took appellant to a hospital where appellant's blood was drawn at approximately 1:20 a.m. on June 11. The blood test revealed that appellant had a blood alcohol level of 0.17, more than twice the legal limit.

At trial, appellant filed a general motion to suppress that did not specifically mention the blood draw but instead argued generally that the evidence offered by the State was not obtained "pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed." Officer McCandless was the only witness at the hearing on the motion to suppress. He testified that a little before midnight on June 10, 2011, he observed a red Corvette "swerving and failing to maintain a single marked lane" in a manner that posed a danger to the surrounding vehicles. The officer testified that, based on his "past experience and the past arrests that [he] had made, just

3

seeing the way that [the Corvette driver] was acting, the time of night and the roadway that [they] were on, that led me to believe that he was possibly intoxicated" or impaired by some means. Officer McCandless then initiated the traffic stop. Appellant cross-examined Officer McCandless on the basis for his probable cause to initiate the traffic stop. Appellant then asked "that the court suppress the arrest as well as the video." The trial court denied the motion to suppress.

Appellant's attorney then stated:

On the record, I am making an objection to the mention, to the admission, to any reference to the blood test, taking results or anything dealing with the blood test of my client, [appellant], based on the failure of the State to get a warrant for the blood taking under the Statute 725, I believe it is, 12(b).

There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case.

My client was under arrest. He invoked his right to counsel prior to the taking of—or the request for the blood. He refused to do the request for blood and breath. He was taken to the hospital.

He further stated that the officer failed to fill out the "THP-51" form correctly because he did not check one of the boxes and the officer "used this authority to withdraw blood against my client's consent and denied him of his constitutional right of illegal search and seizure in this case." He went on to argue that Officer McCandless "didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my

4

client." Appellant asked the trial court to suppress "any aspects of a blood test in this case."

The State responded that Transportation Code section 724.012 was the controlling authority in this case and that it did not require that a search warrant be obtained if one of the listed criteria was met. The State also argued that the "THP-51 form is merely a form with regard to liability" and that "the officer's testimony would be the best form of evidence as to this case and why a mandatory blood draw was a necessity."[2] Appellant responded:

> Therefore, it will be the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law; and I don't believe that the State has properly followed the law when they withdrew the blood here and the statutory and the constitutional law and case law regarding withdrawal of blood with a warrant. They didn't obtain a warrant. This is a warrantless search while the person was in custody under arrest and while the person also invoked his right to counsel; and therefore, a mandatory warrant would be the only way that they could withdraw blood in this case.

The trial court verified that the State was relying on Transportation Code section 724.012(b)(3)(B). It then denied appellant's motion to "suppress or deny the admission of the blood test."

At trial, Officer McCandless testified before the jury regarding his arrest of appellant for DWI. He testified again regarding his observations that led him to

---

[2] Form THP-51 is the statutory authorization form that allows a peace officer to require that a hospital perform a mandatory blood draw. *See* TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *State v. Neesley*, 239 S.W.3d 780, 782 n.2 (Tex. Crim. App. 2007).

5

initiate the traffic stop. He stated that when he made contact with appellant he "could smell a strong odor of alcoholic beverage emitting from the vehicle." He further testified that appellant "admitted to having been drinking" and "could not remember how many he had to drink." Officer McCandless also observed when appellant exited the vehicle that appellant was "slightly unsteady" and "not balanced." He testified that he then administered the HGN test to appellant, which is a test "where we check the eyes and have them follow a stimulus or your finger with both of their eyes to check to see if there is equal tracking, to check to see if there is any involuntary jerking or bouncing of the eye." Officer McCandless observed "a lack of smooth pursuit," which indicated to him that appellant was intoxicated.

Rather than completing the remainder of the HGN test, he decided "to detain [appellant] to get us off of the roadway for my safety and his." Officer McCandless testified that he believed it would have been unsafe to administer the full battery of field sobriety tests at the location where appellant stopped his vehicle because they were "in a moving lane of traffic," making it more likely that they could be struck by traffic exiting the nearby highway or driving along the service road. He handcuffed appellant and placed him in the police vehicle to "take him back to [the] station to complete the standardized field sobriety tests in a controlled environment."

6

However, upon returning to the station, appellant refused to complete any of the field sobriety tests. At that point, based on appellant's driving, "the strong odor of alcohol emitting from the vehicle, the time of night, [and] the fact that he started drinking at 7:00 and [could not] remember how many alcoholic beverages he had consumed," Officer McCandless placed appellant under arrest for suspicion of DWI and asked for a breath or blood specimen. He read appellant a statutory warning advising that he was under arrest for DWI, that a refusal to submit a specimen would result in having his license taken away, and that such a refusal could be used as potential evidence of guilt in any future proceedings. Appellant refused to give a breath or blood sample and refused to sign the statutory warning.

At that point, Officer McCandless asked the station's dispatch to run appellant's criminal history, and he discovered that appellant had at least two prior DWI convictions. At trial, appellant stipulated, for jurisdictional purposes only, to the existence of two prior DWI convictions. Officer McCandless testified that the two prior convictions satisfied the statutory requirement for obtaining a mandatory blood specimen, stating, "At the time of the suspect's arrest, I possessed or received reliable information from a credible source that on two or more occasions the suspect had previously been convicted of or placed on community supervision of an offense under [the appropriate sections of the] Texas Penal Code." He

7

transported appellant to a local hospital where his blood was drawn at 1:20 a.m. on June 11, 2011.

Wesley Colwell, the nurse who drew appellant's blood, testified regarding the procedure he employed to take appellant's blood sample. Dr. Jeff Walterscheid, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences, testified regarding the results of appellant's blood test. He testified that appellant had a blood alcohol level of 0.17, which was "roughly double" the legal limit.

The jury convicted appellant of DWI and the trial court assessed his punishment at twenty-five years' confinement. This appeal followed.

## Analysis

Appellant argues that the trial court erred in failing to suppress the results of his blood draw.

### A. Standard of Review

We review a denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determinations of historical facts [while] review[ing] de novo the court's application of the law of search and seizure to

8

those facts." *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## B.     Probable Cause to Arrest

In his first point of error, appellant argues that the trial court erred in denying his motion to suppress and admitting his blood test results because the State did not show probable cause for his warrantless arrest for DWI.

The Fourth Amendment to the United States Constitution, which is made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." U.S. CONST. amends. IV, XIV; *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). Under the Fourth Amendment, a warrantless arrest for an offense committed in the officer's presence

9

is reasonable if the officer has probable cause. *Amador*, 275 S.W.3d at 878 (citing *United States v. Watson*, 423 U.S. 411, 418, 96 S. Ct. 820 (1976)). "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.* (citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223 (1964)).

A finding of probable cause requires "more than bare suspicion" but less than would justify conviction. *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302 (1949)). The test for probable cause is objective, "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* Once a defendant has carried his initial burden of producing some evidence rebutting the presumption of proper police conduct—i.e. by establishing that the seizure occurred without a warrant—the burden shifts to the State to prove that the seizure was nonetheless reasonable. *Id.*

Here, evidence at the suppression hearing indicated that Officer McCandless observed appellant commit a moving violation by failing to maintain his lane and observed appellant weaving within his lane and crossing onto the shoulder. Officer McCandless testified that he was concerned appellant's driving posed a danger to

10

the other drivers on the roadway. When Officer McCandless pulled appellant over, he smelled a strong odor of alcohol coming from appellant's vehicle, appellant acknowledged that he had consumed alcoholic beverages, and appellant was unsteady on his feet as he complied with Officer McCandless's request that he exit the vehicle. Officer McCandless also administered a portion of the HGN test and determined that appellant was possibly intoxicated, and appellant refused to cooperate with further field sobriety testing. Given the totality of the circumstances, this evidence constituted "more than a bare suspicion" and was sufficient to warrant Officer McCandless's belief that appellant had committed the offense of DWI. *See id.*

Appellant argues that this case is similar to *State v. Mosely*, and, thus, we should reverse the trial court. However, we consider *Mosely* to be distinguishable from the present case. The trial court in *Mosely* granted the defendant's motion to suppress and its findings of fact and conclusions of law supported that ruling, which is not the case here. *See* 348 S.W.3d 435, 441 (Tex. App.—Austin 2011, pet. ref'd) ("The question we must answer is whether this record so thoroughly satisfies the State's burden of establishing that [the officer] had probable cause to arrest Mosely for DWI that the trial court's ruling to the contrary was an abuse of discretion."). Furthermore, while the court in *Mosely* concluded that evidence that Mosely had caused an accident, his breath smelled of alcohol, his eyes were

11

bloodshot, and he had admitted to having a couple of drinks did not constitute evidence of probable cause in that case, the State here presented additional evidence establishing Officer McCandless's probable cause for arresting appellant. *See id.* at 441 (concluding State did not establish that Mosely "lacked the normal use of his mental or physical faculties" because no officer performed field sobriety testing or "form[ed] an opinion as to whether Mosely was intoxicated"; officers did not observe slurred speech, trouble maintaining balance, or "anything else to suggest that [Mosely] was physically or mentally impaired").

Here, as we have already stated, Officer McCandless observed appellant driving in an unsafe manner that violated at least one provision of the Transportation Code; appellant smelled strongly of alcohol and admitted that he had been drinking; and appellant was unsteady on his feet. Officer McCandless testified that the circumstances surrounding appellant's traffic stop, including the unsafe driving, the unsafe location appellant chose to pull over, and appellant's actions and speech at the time he was stopped, led him to form the opinion that appellant was intoxicated, unlike the officers in *Mosely* who testified that they did not form an opinion regarding whether Mosely was intoxicated. *See Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet ref'd) (concluding that officer's testimony "that an individual is intoxicated is probative evidence of intoxication."). And, unlike *Mosely*, in which officers did not

12

administer field sobriety tests, appellant failed the only portion of the field sobriety testing to which he submitted, refused to allow Officer McCandless to complete the field sobriety testing, and refused to provide a breath or blood sample. *See* TEX. TRANSP. CODE ANN. § 724.061 (Vernon 2011) ("A person's refusal of a request by an officer to submit to the taking of a specimen of breath or blood, whether the refusal was express or the result of an intentional failure to give the specimen, may be introduced into evidence at the person's trial."); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (observing that defendant's refusal to submit to breath test is admissible under Transportation Code section 724.061 as tending to show defendant's consciousness of guilt). Thus, we conclude that *Mosely* is distinguishable from the present case.

We cannot conclude that the trial court abused its discretion in denying appellant's motion to suppress on this ground. We overrule appellant's first point of error.

## C.    **Warrantless Blood Draw**

In his second point of error, appellant argues that the warrantless taking of his blood sample violated his Fourth Amendment rights by requiring him to submit to a blood test without his consent and without other justification for the search.

13

### 1. *Was this complaint preserved?*

The State argues, both in its original brief and in its response to appellant's motion for rehearing, that appellant did not preserve this complaint for consideration on appeal.

To preserve a complaint for appellate review, Texas Rule of Appellate Procedure 33.1 requires that: (1) the complaining party made a timely and specific request, objection, or motion; and (2) the trial court either ruled on the request, objection, or motion or refused to rule and the complaining party objected to that refusal. TEX. R. APP. P. 33.1(a); *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). If a party fails to properly object to errors at trial, even constitutional errors can be forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). We should not address the merits of forfeited errors on appeal. *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (quoting *Ford v. State*, 305 S.W.3d 350, 532–33 (Tex. Crim. App. 2009)).

At trial, appellant filed a general motion to suppress that did not specifically mention the blood draw but argued generally that "[t]he acquisition of [the State's] evidence was not pursuant to a search warrant, was absent exigent circumstances, and made without probable cause to believe the Accused was engaged in criminal activity or that such evidence, if any, was in danger of being destroyed."

Appellant's attorney also objected, on the record at the suppression hearing, to the State's failure to obtain a warrant "for the blood taking under the Statute 725, I believe it is, 12(b). There is no authority for the officer to take the blood of my client without a warrant, and that is what he did in this case." Appellant's attorney also argued that Officer McCandless "didn't follow the statutory authority that required him to in this particular case to have a warrant before he withdrew the blood from my client." Appellant asked the trial court to suppress "any aspects of a blood test in this case."

The State responded that Transportation Code section 724.012 was the controlling authority in this case and that it did not require that a search warrant be obtained if one of the listed criteria was met. Appellant responded by asserting another objection:

> Therefore, it will be the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law; and I don't believe that the State has properly followed the law when they withdrew the blood here and the statutory and the constitutional law and case law regarding withdrawal of blood with a warrant. They didn't obtain a warrant. This is a warrantless search while the person was in custody under arrest and while the person also invoked his right to counsel; and therefore, a mandatory warrant would be the only way that they could withdraw blood in this case.

Appellant complains on appeal that the warrantless taking of his blood sample violated his Fourth Amendment rights. We conclude that his objection that the statute relied upon by the State did not provide "authority for the officer to take

15

the blood of my client without a warrant" and his objection based on "the Constitution of the United States as well as the statutory laws of the State of Texas on the search and seizure law" for obtaining evidence without a warrant preserved this complaint for our review. These objections were sufficient to put the trial court on notice that appellant was complaining that his Fourth Amendment rights against unreasonable search and seizure were violated by the warrantless taking of his blood sample.

However, appellant also argues, in part of his second point of error, that Transportation Code section 724.012(b) is itself unconstitutional because it "cannot authorize what the Constitution forbids." He did not argue in the trial court that the statute itself was unconstitutional. He complained only that the taking of his blood violated his Fourth Amendment rights by requiring him to submit to a warrantless blood test without adequate consent under the Fourth Amendment. Thus, he did not preserve his complaint regarding the constitutionality of the statute. [3] *See* TEX. R. APP. P. 33.1.

---

[3] On rehearing, appellant argues that his failure to object was excused under the "right not recognized" exception to the general rules of preservation. *See Black v. State*, 816 S.W.2d 350, 368 (Tex. Crim. App. 1991) (Campbell, J., concurring) (explaining, under "right not recognized" exception, that defendant is excused from objecting if (1) claim was so novel that basis of claim was not reasonably available at time of trial, or (2) law was so well settled by Court of Criminal Appeals that objection at time of trial would have been futile). However, more recent precedent from the Court of Criminal Appeals has held that the "right not recognized" exception is inconsistent with current Texas law of error preservation. *See, e.g.*, *Sanchez v. State*, 120 S.W.3d 359, 365–67 (Tex. Crim. App. 2003). We

16

Accordingly, we address only appellant's complaint that the warrantless taking of his blood violated his Fourth Amendment rights.

### 2. *Did the warrantless taking of appellant's blood sample violate his Fourth Amendment rights?*

As we recognized above, the Fourth Amendment protects against unreasonable searches and seizures. U.S. CONST. amend. IV; *State v. Villarreal*, — S.W.3d—, No. PD-0306-14, 2014 WL 6734178, at \*8 (Tex. Crim. App. Nov. 26, 2014). The taking of a blood specimen is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834 (1966); *Villarreal*, 2014 WL 6734178, at \*9.

"In general, to comply with the Fourth Amendment, a search of a person pursuant to a criminal investigation (1) requires a search warrant or a recognized exception to the warrant requirement, and (2) must be reasonable under the totality of the circumstances." *Villarreal*, 2014 WL 6734178, at \*8; *see also Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967) (holding that warrantless search or seizure is per se unreasonable unless it falls under recognized exception to warrant requirement). Established exceptions to the warrant

also observe that this is not a case where the objection was insufficient or unspecific—appellant made no objection to the constitutionality of the statute in any way. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. 2009) (holding that facial challenge to constitutionality of statute is forfeitable right that is waived if defendant fails to raise it in trial court); *Curry v. State*, 910 S.W.2d 490, 496 (Tex. Crim. App. 1995) (holding that, to preserve error, defendant must make specific, timely challenge to constitutionality of statute as applied to him).

requirement include the consent exception, the exigency exception, the automobile exception, the search-incident to arrest exception, and the special-needs doctrine. *See Villarreal*, 2014 WL 6734178, at *8 (discussing consent, automobile, search-incident-to-arrest, and special-needs exceptions); *Gore v. State*, 451 S.W.3d 182, 193–97 (Tex. App.—Houston [1st Dist.] 2014, pet. filed) (discussing exigency exception)

Here, it is undisputed that appellant's blood sample was taken without a warrant. However, the State argues that Officer McCandless complied with the mandatory blood draw statute. Thus, we construe its argument as asserting that the consent exception applies because appellant's blood sample was taken pursuant to Texas' implied consent/mandatory blood draw statutory scheme, or alternatively, that the mandatory blood draw statute itself constitutes an exception to the warrant requirement.

The Transportation Code contains a provision establishing implied consent to the taking of a blood or breath specimen for all drivers arrested on suspicion of DWI:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a) (Vernon 2011); *Villarreal*, 2014 WL 6734178, at *6. This provision is "modified by section 724.013, which establishes a right to refuse to provide a breath or blood sample in routine DWI cases." TEX. TRANSP. CODE ANN. § 724.013 (Vernon 2011) (providing that "a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer"); *Villarreal*, 2014 WL 6734178, at *6.

However, the right to refuse is not absolute because section 724.012(b) establishes that when certain aggravating factors are present during a DWI stop, an officer is required to obtain a specimen even if the suspect refuses. TEX. TRANSP. CODE ANN. § 724.012(b) (Vernon 2011); *Villarreal*, 2014 WL 6734178, at *6. Specifically, section 724.012(b)(3)(B) provides that a peace officer "shall require the taking of a specimen of the person's breath or blood" if the arrest is for an offense "involving the operation of a motor vehicle . . . and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person . . . on two or more occasions, has been previously convicted of . . . an offense under Section 49.04, 49.05, 49.06, or 49.065, Penal Code. . . ." TEX. TRANSP. CODE ANN. § 724.012(b)(3)(B); *Villarreal*, 2014 WL 6734178, at *7.

19

In our original opinion, we applied the Court of Criminal Appeals' precedents and held that the implied consent statute implied appellant's consent to the blood sample, and thus, his Fourth Amendment rights were not violated here. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973) (holding that search conducted pursuant to consent is recognized exception to warrant requirement); *Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) (en banc) (stating, in dicta, that implied consent law "implies a suspect's consent to a search in certain instances" and that such consent was important "when there is no search warrant, since it is another method of conducting a constitutionally valid search").

However, while this case has been pending on direct appeal, the Court of Criminal Appeals considered the question of whether a warrantless search of a DWI suspect's blood conducted pursuant to section 724.012(b) complied with Fourth Amendment requirements in *State v. Villarreal*. 2014 WL 6734178, at *6–8. The State argued in part that the taking of Villarreal's blood sample was "categorically reasonable" under "the consent exception [to the warrant requirement], applicable in the form of a prior waiver through implied consent."[4]

---

[4] The State in *Villarreal* also argued that its search was permissible pursuant to the automobile exception, the special-needs exception, and the search-incident-to-arrest exception. *Villarreal*, 2014 WL 6734178, at *10. The Court of Criminal Appeals rejected the State's arguments on all of these grounds. *Id.* at 10–15. However, we do not discuss the court's holdings on these grounds here because

20

*Id.* at *10. The State asserted that, "in light of the existence of the implied-consent and mandatory-blood-draw provisions [of the Transportation Code,] a driver 'impliedly agrees ahead of time that, in exchange for the privilege of driving on our roads, he is willing to waive the right to a warrant in [the limited circumstances set out in the mandatory-blood-draw provisions].'" *Id.* at *11.

The Court of Criminal Appeals rejected this argument. *Id.* It held that, "to be valid for Fourth Amendment purposes, consent must be freely and voluntarily given based on the totality of the circumstances, and must not have been revoked or withdrawn at the time of the search." *Id.* (citing *Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2047–48, and *Florida v. Jimeno*, 500 U.S. 248, 252, 111 S. Ct. 1801, 1804 (1991)). The court cited cases from several other jurisdictions that have recently considered this issue and have rejected the proposition that a DWI suspect waives his Fourth Amendment rights through implied consent. *Id.* at *13–14. It also "observe[d] that almost all of the Texas courts of appeals that have considered such challenges to Texas's statutory scheme have reached that same conclusion." *Id.* at *13; *see also Gore*, 451 S.W.3d at 193 (holding that implied consent/mandatory blood draw statutes as applied to defendant whose blood was drawn without warrant or another exception to warrant requirement violated Fourth Amendment in part because "implied consent that cannot be withdrawn does not

the only exception asserted by the State in the present case in the consent exception.

21

meet the requirements for voluntary consent under the Fourth Amendment"); *State v. Anderson*, 445 S.W.3d 895, 908 (Tex. App.—Beaumont 2014, no pet.) (concluding that section 724.012(b) "does not constitute an exception to the Fourth Amendment's warrant requirement"); *Aviles v. State*, 443 S.W.3d 291, 294 (Tex. App.—San Antonio 2014, pet. filed) (op. on remand) (holding same); *Forsyth v. State*, 438 S.W.3d 216, 222–23 (Tex. App.—Eastland 2014, pet. ref'd) (holding that implied consent under Transportation Code is not equivalent to voluntary consent for Fourth Amendment purposes).

The Court of Criminal Appeals in *Villarreal* stated, "We agree with these courts' assessments that, in the context of a nonconsensual, warrantless bodily search of a person suspected of criminal activity, a statute providing for irrevocable implied consent cannot supply the type of voluntary consent necessary to establish an exception to the Fourth Amendment warrant requirement." 2014 WL 6734178, at *14. It concluded that "implied consent that has been withdrawn or revoked by a suspect cannot serve as a substitute for the free and voluntary consent that the Fourth Amendment requires." *Id.* at *11.

Finally, the *Villarreal* court rejected the argument that the mandatory blood draw statute itself constituted an exception to the warrant requirement. It reaffirmed the Supreme Court's determination that, "in the absence of a search warrant, a 'search of the person is reasonable only if it falls within a recognized

exception' to the warrant requirement." *Id.* at *8, 17 (quoting *Missouri v. McNeely*, 133 S. Ct. 1552, 1558 (2013)). The majority in *Villarreal* rejected the dissenting justice's opinion that "a warrantless, nonconsensual blood draw conducted pursuant to provisions in the Transportation Code should be upheld as generally reasonable in light of the Legislature's clear intent to except such a search from the warrant requirement." *Id.* at *18. In reaching its conclusion, the *Villarreal* court relied in part on the recent Supreme Court opinion in *McNeely*.

"*McNeely* reaffirmed the principle that a compelled physical intrusion beneath the skin to obtain evidence in a criminal investigation implicates significant privacy interests, and this privacy interest is not automatically diminished simply because an individual is suspected of a serious DWI offense." *Id.* (citing *McNeely*, 133 S. Ct. at 1558). *McNeely* also held that "'the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement without a showing' that some established exception, such as exigency, applies." *Id.* (quoting *McNeely*, 133 S. Ct. at 1565). The Court of Criminal Appeals concluded:

> [A]lthough we acknowledge the magnitude of the drunk driving problem in Texas and the government's legitimate and substantial interest in curbing that problem, we see no compelling need on the part of law enforcement to undertake to solve this problem through warrantless, nonconsensual searches of suspects' blood. This is particularly so in light of the fact that warrants for such blood testing are often readily available, thereby providing the "traditional justification that a warrant provides." The marginal benefit to law

23

> enforcement in combating Texas's drunk-driving problem through warrantless searches is generally outweighed by an individual's substantial privacy interest here.

*Id.* (internal citations omitted) (quoting *McNeely*, 133 S. Ct. at 1559).

Here, it is undisputed that Officer McCandless did not obtain a warrant. Furthermore, appellant refused to provide a breath or blood specimen after Officer McCandless had arrested him on suspicion of DWI, and he refused to sign the statutory warnings that Officer McCandless had provided to him regarding the consequences of his failure to provide a specimen. Under the totality of the circumstances, appellant had revoked or withdrawn any implied consent to the blood draw at the time of the search. Thus, we conclude that appellant did not provide consent consistent with the requirements of the Fourth Amendment. *See Schneckloth*, 412 U.S. at 227, 93 S. Ct. at 2047–48; *Villarreal*, 2014 WL 6734178, at *11, 14; *Gore*, 451 S.W.3d at 193.

Furthermore, we conclude that the warrantless taking of appellant's blood sample pursuant to the implied consent/mandatory blood draw statutory scheme did not satisfy the requirements of the Fourth Amendment without a showing that some established exception to the warrant requirement applied. *See Villarreal*, 2014 WL 6734178, at *11, 18; *Gore*, 451 S.W.3d at 193; *see also McNeely*, 133 S. Ct. at 1565 (holding that "the general importance of the government's interest in [curbing DWI offenses] does not justify departing from the warrant requirement

without a showing'" that some established exception to warrant requirement applies). The State did not present evidence regarding any other exception to the warrant requirement at the suppression hearing. *See Amador v. State*, 221 S.W.3d 666, 672–73 (Tex. Crim. App. 2007) (holding that once defendant establishes absence of warrant, State must prove that warrantless blood draw was reasonable under totality of circumstances); *Gore*, 451 S.W.3d at 193 (holding, where appellant withdrew any implied consent that she may have given and affirmatively refused to give consent for warrantless blood draw, that warrantless search "may not be premised on the consent exception to the warrant requirement" and that "the State must come forth with some other recognized exception to the warrant requirement").

Accordingly, we conclude that the taking of appellant's blood sample here violated his Fourth Amendment rights, and the trial court erred in refusing to suppress the blood sample. *See Katz*, 389 U.S. at 357, 88 S. Ct. at 514; *Villarreal*, 2014 WL 6734178, at *11, 14.

### 3.    *Was the error in this case harmful?*

Because the error here violated appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

*See* TEX. R. APP. P. 44.2(a); *Weems v. State*, 434 S.W.3d 655, 667 (Tex. App.—San Antonio 2014, pet. granted).

Here, the jury charge instructed the jurors that "intoxicated" means:

(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or

(B) *having an alcohol concentration of 0.08 or more.*

(Emphasis added). The State presented Officer McCandless's testimony regarding appellant's conduct leading up to and following his arrest as evidence of intoxication. The State also presented the testimony of the nurse who took appellant's blood sample on the night he was arrested. Finally, the State presented the testimony of Dr. Jeff Walterscheid, the assistant chief toxicologist at the Harris County Institute of Forensic Sciences. Dr. Walterscheid testified that appellant's blood sample contained .17 grams of ethanol per 100 milliliters and that this amount of alcohol was "[r]oughly double" the legal limit in Texas.

Given the testimony regarding the taking of appellant's blood sample and his toxicology results and the jury's instruction that intoxicated means, in part, "having an alcohol concentration of 0.08 or more," we cannot determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See Weems*, 434 S.W.3d at 667.

We conclude that the warrantless taking of appellant's blood sample in this case violated his Fourth Amendment rights by requiring him to submit to a blood test without a warrant or a recognized exception to the warrant requirement. We further conclude that this error was harmful and accordingly remand the case for a new trial consistent with our opinion.

We sustain appellant's second point of error with respect to his complaint that the warrantless taking of his blood violated his Fourth Amendment rights.

## Conclusion

We reverse the judgment of the trial court and remand for a new trial consistent with this opinion.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Publish.   TEX. R. APP. P. 47.2(b).

27