

NUMBER 13-14-00117-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS, Appellant,

v.

SALVADOR MARTINEZ, Appellee.

On appeal from the 25th District Court
of Gonzales County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria
Memorandum Opinion by Justice Longoria**

The State appeals the trial court's order suppressing a blood sample obtained from appellee Salvador Martinez (Martinez) without his consent pursuant to the mandatory blood-draw statute.  *See* TEX. TRANSP. CODE ANN. § 724.012(b) (West, Westlaw through

2013 3d C.S.) ("mandatory blood-draw statute"). The trial court concluded both that the mandatory blood-draw statute was unconstitutional on its face and that the drawing of Martinez's blood was unreasonable under the Fourth Amendment. *See* U.S. CONST. amend. IV. We reject Martinez's challenge that the mandatory blood-draw statute was unconstitutional on its face, but affirm the trial court's ruling that the blood draw was unreasonable.

## I. BACKGROUND

On the night of September 1, 2012, Texas Department of Public Safety Trooper Joel Johnson stopped Martinez's vehicle because of a defective license-plate lamp. After making contact with Martinez, Johnson smelled an odor of alcohol emanating from Martinez and observed two open containers of alcohol within the vehicle. Johnson directed Trooper Joshua Garcia, who Johnson was training that night, to administer field sobriety tests to Martinez. Johnson took over administering the tests because Martinez was not cooperating with Garcia. Johnson testified that it took "quite a bit of work" to get Martinez to complete the tests because he was still being uncooperative.

After Martinez finished the tests, Johnson determined that he was intoxicated and placed him under arrest. Johnson read Martinez the statutory warning requesting a sample of breath. *See id.* § 724.015 (West, Westlaw through 2013 3d C.S.) (listing the information an officer must inform a person of before requesting a sample of breath). According to Johnson's uncontested testimony, Martinez replied "fuck you." After running appellee's name through his onboard computer, Johnson learned that appellee had two previous convictions for driving while intoxicated. In compliance with department policy at the time, Johnson took Martinez to do a "mandatory blood draw" at the closest hospital,

2

which was located fifteen miles from the location of the stop. Johnson testified that the procedure for obtaining a warrant for a blood draw in Gonzalez County at night is for the arresting officer to contact a magistrate and the magistrate would then meet the officer and the accused at the hospital. However, Johnson testified that he did not attempt to apply for a warrant or ascertain how long it would have taken to apply for one, but relied on the mandatory blood-draw statute due to appellant's previous two DWI convictions. Johnson further testified that approximately one hour and forty-five minutes elapsed between the time of the initial stop and the time Johnson arrived at the hospital with Martinez.

The State charged appellee by indictment with driving while intoxicated, third offense. *See* TEX. PENAL CODE ANN. § 49.04 (West, Westlaw through 2013 3d C.S.). Appellee filed a pretrial motion to suppress asserting that section 724.012 of the Texas Transportation Code was unconstitutional on its face and that the blood draw was unreasonable under the Fourth Amendment. Following an oral hearing, the trial court granted appellee's motion. At the State's request, the trial court entered the following findings of fact and conclusions of law:

### Findings of Fact[1]

1. On October 11, 2012, the State indicted the defendant for allegedly committing the offense of felony Driving While Intoxicated ("D.W.I.").

2. Texas Highway Patrol Trooper J. Johnson testified that, on the date in question, he stopped the defendant for having a defective license plate lamp. R.R. at 6. Upon making contact with the defendant, he observed two open containers of alcohol in the vehicle and the odor of alcohol emitting from the vehicle. *Id.*

3. After conducting field sobriety tests, Johnson determined that the defendant was intoxicated and placed the defendant under arrest. *Id.* at

---

[1] We have added some numbers and paragraph breaks for ease of reading.

3

7. Johnson asked the defendant for a breath specimen, and the defendant refused. *Id.*

4. Johnson explained that, "if we needed a search warrant, the County Judge and JPs would meet us at the hospital so we could obtain a search warrant." *Id.* However, Johnson did not do so because he learned that the defendant already had at least two previous D.W.I. convictions. *Id.* at 8. Pursuant to departmental policy and a good-faith reliance on the law, because it was a third D.W.I. or [m]ore, Johnson drove the defendant to a hospital to conduct a mandatory blood draw. *Id.* Johnson did not obtain a search warrant for the blood draw nor did he try to. *Id.*

5. Johnson's investigation of the defendant for signs of intoxication lasted from approximately thirty to forty-five minutes at the scene and it was another hour before a hospital fifteen miles away from the scene of the offense drew the defendant's blood. *Id.* at 9–10.

6. On cross-examination, Johnson explained there was no judge on duty on the night in question in Gonzales County in order to ask for a search warrant. *Id.* at 10.

7. This Court finds that the defendant did not consent to a blood draw.

8. This court finds that Trooper Johnson conducted a mandatory blood draw based on good-faith reliance of departmental policy and the law, specifically Texas Transportation Code Section 724.012(b)(3)(B).

9. This Court finds credible Trooper Johnson's testimony that he could have gotten a warrant for a blood draw and there were no exigent circumstances which would have prevented him from obtaining a warrant.

10. This Court finds that the defendant objected to a warrantless, involuntary blood draw as running contrary to the Fourth Amendment and made a Fourth-Amendment facial challenge to Section 724.012.

### Conclusions of Law

1. In *State v. Villarreal,* the Corpus Christi Thirteenth District Court of Appeals concluded,

    Given the absence of a warrant, the absence of exigent circumstances, and the absence of consent, we agree with the trial court's conclusion that the State failed to demonstrate that the involuntary blood draw was reasonable under the

4

> Fourth Amendment or that an exception to the Fourth Amendment's warrant requirement is applicable to this case, as was its burden.
>
> No. 13-13-00253-CR, 2014 WL 1257150, at *11 (Tex. App.-Corpus Christi Jan. 23, 2014, pet. granted) (pending publication).

2. This Court concludes that the defendant's blood was illegally obtained without a warrant and in the absence of a recognized exception to the warrant requirement, and that the statutory blood draw was invalid and unconstitutional without exigent circumstances.

3. This Court also concludes that Section 724.012 is facially unconstitutional as "no set of circumstances exists under which the statute will be valid." *Santikos v. State,* 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

4. Based on the foregoing, the motion to suppress evidence is GRANTED.

This appeal followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2013 3d C.S.) (authorizing the State to appeal a pretrial order granting a motion to suppress evidence).

The State asserts two issues on appeal: (1) the trial court erred by finding that the mandatory blood-draw statute is facially unconstitutional; and (2) the trial court erred when it concluded that the blood draw from Martinez was unreasonable. Martinez responds that the mandatory blood-draw statue is facially unconstitutional because there are no circumstances in which it could operate constitutionally. Martinez further asserts that the blood draw was unreasonable under the Fourth Amendment regardless of the constitutionality of the mandatory blood-draw statute.

## II. IS THE MANDATORY BLOOD-DRAW STATUTE FACIALLY UNCONSTITUTIONAL?

We first address the trial court's conclusion that section 724.012 of the Texas Transportation Code is facially unconstitutional.

### A. Standard of Review and Applicable Law

5

Whether a statute is unconstitutional on its face is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin our analysis by presuming that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013). In a facial challenge, courts consider only how the statute is written and not how it operates in practice. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger has the burden to demonstrate that "no set of circumstances exists under which the statute would be valid." *Rosseau*, 396 S.W.3d at 557 (quoting *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992) (en banc)).

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV; *Riley v. California*, 573 U.S. ___, 134 S. Ct. 2473, 2482 (2014).[2] "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley*, 573 U.S. at ___, 134 S. Ct. at 2482 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). When a search is undertaken to uncover evidence of criminal wrongdoing, reasonableness generally requires obtaining a judicial warrant. *Id.* In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement. *Id.*; *Kentucky v. King*, 563 U.S. ___, 131 S. Ct. 1849, 1856–57 (2011).

The Texas Transportation Code contains a provision implying consent to taking a specimen of blood or breath for testing from all drivers arrested on suspicion of operating a vehicle while intoxicated:

---

[2] The taking of a blood specimen from a person suspected of DWI is a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 767 (1966).

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 724.011(a) (West, Westlaw through 2013 3d C.S.).

A person arrested for DWI nevertheless has the general right to refuse to provide a sample. *See id.* § 724.013 (West, Westlaw through 2013 3d C.S.) ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer."). The accused's right to refuse is subject to several exceptions which, if applicable, require the officer to obtain a sample of breath or blood even without the accused's consent. *Id.* § 724.012(b); *Perez v. State*, No. 01-12-01001-CR, ___ S.W.3d ____, 2015 WL 1245469, at *7 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no. pet. h.) (op. on reh'g). In the case at bar, the relevant exception is when the arresting officer learns from a credible source that the accused had previously been convicted or placed on community supervision two or more times for DWI or a variety of other alcohol-related offenses. *See* Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 724.012(b)(3).[3]

## B. Discussion

---

[3] The other circumstances in which a blood draw is mandatory are: (1) when the person was the operator of a motor vehicle or a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and when the officer reasonably believes that as a direct result of the accident any individual has died, will die, or suffered serious bodily injury; (2) an individual other than the person has suffered serious bodily injury and has been transported to a hospital or other medical facility for treatment; and (3) the officer arrested the person for an offense under section 49.045 of the penal code. Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 724.012(b)(1), (2) (West, Westlaw through 2013 3d C.S.). None of these circumstances are relevant here.

Martinez asserts that the mandatory-blood draw statute is facially unconstitutional because it creates a categorical rule requiring officers to obtain a blood sample from persons arrested for DWI without a warrant. Appellee reasons that this requirement is inconsistent with the holding of the United States Supreme Court in *Missouri v. McNeely* rejecting the argument that the State's need to search an accused's blood for alcohol before it dissipates was a *per se* exigency dispensing with the need for a warrant. 569 U.S. ___, 133 S. Ct. 1552, 1563 (2013); *see Weems v. State*, 434 S.W.3d 655, 664 (Tex. App.—San Antonio 2014, pet. granted) (holding that the prohibition against *per se* rules announced in *McNeely* also applied to a similar case challenging the mandatory blood-draw statute).

We disagree. As this Court held in *State v. Villarreal*, the mandatory blood-draw statute is not an exception to the warrant requirement. *State v. Villarreal*, No. 13-13-00253-CR, ___ S.W.3d ____, 2014 WL 1257150, at *11 (Tex. App.—Corpus Christi Jan. 23, 2014), *aff'd*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014) (motion for rehearing granted); *accord Weems*, 434 S.W.3d at 664; *Gore v. State*, 451 S.W.3d 182, 189 (Tex. App.—Houston [1st Dist.] 2014, pet. filed). In fact, the mandatory blood-draw statute does not address or purport to dispense with the Fourth Amendment's requirement of warrants for blood draws. *Villarreal*, 2014 WL 1257150, at *11. An officer may comply with both the mandatory blood-draw statute and the reasonableness requirements of the Fourth Amendment by obtaining a warrant or by proceeding without a warrant if the specific circumstances of the case present an exigency sufficient to dispense with the requirement of a warrant. *See Weems*, 434 S.W.3d at 664; *Villarreal*, 2014 WL 1257150, at *11. When addressing similar facial challenges to the mandatory

8

blood-draw statute the Fourteenth Court of Appeals came to a similar conclusion: "[i]t is the officer's failure to obtain a warrant and the State's failure to prove an exception to the warrant requirement, not the mandatory nature of the blood draw statute, that violate the Fourth Amendment." *Douds v. State*, 434 S.W.3d 842, 860 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (op. on reh'g); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ____, 2014 WL 3973089, at *3 (Tex. App.—Waco Aug. 14, 2014, pet. granted) (quoting and following *Douds*); *accord State v. Anderson*, 445 S.W.3d 895, 909 (Tex. App.—Beaumont 2014, no pet.). Because there are certain circumstances in which the statute could operate constitutionally, we conclude that Martinez has not carried his burden to demonstrate that the mandatory blood-draw statute is unconstitutional in all circumstances. *See Rosseau*, 396 S.W.3d at 557.

We sustain the State's first issue.

### III. WAS THE BLOOD DRAW REASONABLE?

We next address the State's challenge to the trial court's conclusion that the blood sample "was illegally obtained [from appellee] without a warrant and in the absence of a recognized exception to the warrant requirement, and that the statutory blood draw was invalid and unconstitutional without exigent circumstances." The State brings four arguments in support of its request that this Court reverse the trial court's ruling on the motion to suppress and remand for further proceedings. We address each in turn.[4]

---

[4] The State's arguments in this case are essentially the same as those rejected by the Texas Court of Criminal Appeals in *Villarreal*. *See generally State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014). On February 25, 2015, the Texas Court of Criminal Appeals granted the State's motion for rehearing in *Villarreal* but did not withdraw its opinion on original submission. Even though the continued precedential force of *Villarreal* is uncertain, we find the opinion persuasive and will apply its reasoning in this case pending further guidance from the Texas Court of Criminal Appeals. *See Perez v. State*, No. 01-12-01001-CR, ___ S.W.3d ____, 2015 WL 1245469, at *6 (Tex. App.—Houston [1st Dist.] Mar. 17, 2015, no pet. h.) (applying the holding of *Villarreal* after the Texas Court of Criminal Appeals granted rehearing).

### A. Standard of Review for a Motion to Suppress

We review a trial court's ruling on a motion to suppress for abuse of discretion using a bifurcated standard of review.  *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013).  We give almost total deference to the trial judge's determination of historical facts and of mixed questions of law and fact that rely on credibility determinations if they are supported by the record.  *Id.*  We afford the prevailing party the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it.  *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013).  We review de novo the trial court's application of law to a particular set of facts.  *Id.* at 667.  We will uphold the trial judge's ruling if it is correct on any theory of law reasonably supported by the record.  *Id.* The defendant bears the initial burden of producing evidence to rebut the presumption of proper police conduct.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  The defendant satisfies this burden by showing that the search or seizure occurred without a warrant, shifting the burden to the State to show either the existence of a warrant or that the search and seizure was reasonable.  *Id.*

### B. Discussion

The State's first argument is that the mandatory blood-draw statute is a codification of the consent exception to the warrant requirement.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (observing that free and voluntary consent to search is an exception to the warrant requirement).  The State reasons that Fourth Amendment rights may be waived, *see Zap v. United States*, 328 U.S. 624, 628 (1946), and that by accepting a license to drive on Texas roads a driver has impliedly consented to waive the warrant requirement in the narrow circumstances in which the statute makes a blood draw

mandatory.  *See Beeman v. State*, 86 S.W.3d 613, 615 (Tex. Crim. App. 2002) (observing that "[t]he implied consent law does just that—it implies a suspect's consent to a search in certain instances").

We disagree.  Consent to search is a well-recognized exception to the warrant requirement, but consent must be freely and voluntarily given.  *Schneckloth*, 412 U.S. at 227; *see Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) (recognizing, in a context where the mandatory blood-draw statute was inapplicable, that a driver arrested for DWI must give free and voluntary consent to a warrantless blood draw).  Both the United States Supreme Court and the Texas Court of Criminal Appeals have held that a necessary element of valid consent is the ability to limit or revoke it.  *See Florida v. Jimeno*, 500 U.S. 248, 252 (1991) ("A suspect may of course delimit as he chooses the scope of the search to which he consents."); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (observing that it is "undisputed" that consent may be "limited or revoked").  We agree with the holdings of multiple Texas appellate courts that it would be inconsistent with these principles to uphold a warrantless search of a suspect's blood on the basis of consent when the suspect has refused to submit to the search.[5]  *See Perez*, 2015 WL 1245469, at *8; *Forsyth v. State*, 438 S.W.3d 216, 222–23 (Tex. App.—Eastland 2014, pet. ref'd); *Gore*, 451 S.W.3d at 193; *Lloyd v. State*, No. 05-13-01004-CR, ___ S.W.3d ____, 2014 WL 7249747, at *3 (Tex. App.—Dallas Dec. 22, 2014, pet. ref'd).  Whether consent was voluntary is a question of fact to be determined from all the

---

[5] The case cited by the State, *Beeman v. State*, is not to the contrary.  86 S.W.3d 613, 615 (Tex. Crim. App. 2002).  In *Beeman*, the issue was whether the implied consent statute prohibited drawing a suspect's blood pursuant to a warrant.  *Id.* at 614.  The Court held that the statute did not prohibit obtaining a warrant to draw blood from a suspect.  *Id.* at 615.  The Court explained that the implied consent statute gives "police officers nothing more than the Constitution already gives them—the ability to apply for a search warrant and, if the magistrate finds probable cause to issue that warrant, the ability to effectuate it."  *Id.* at 616.

11

circumstances. *Schneckloth*, 412 U.S. at 227. Johnson testified that when he read Martinez the statutory warning, Martinez replied: "fuck you." There is no evidence in the record that Martinez changed his mind once they arrived at the hospital. Because there is no evidence that Martinez freely and voluntarily consented, we may not uphold the warrantless search of appellee's blood on the basis of consent. *See id.* We reject the State's first argument.

The State's second argument is that the mandatory blood-draw statute is constitutional under the general Fourth Amendment balancing test even if it does not fit into an established exception to the warrant requirement. Under the test cited by the State, courts "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1970 (2013) (internal quotation marks omitted). However, this test is applicable in circumstances that either do not involve an active criminal investigation, or where the primary law enforcement purpose is not to gather information for a criminal prosecution. *E.g.*, *id.* at 1969–70. The United States Supreme Court has made clear that in the context of an active criminal investigation, and when the primary goal of law enforcement is to gather evidence for prosecution, a warrantless search of a person is *per se* unreasonable unless it falls within one of the established exceptions to the warrant requirement. *See Riley*, 573 U.S. at ___, 134 S. Ct. at 2482 (holding that "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant" or that the search fit into a recognized exception to the warrant requirement) (internal citations omitted, ellipses in the original); *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558 ("Our cases have

12

held that a warrantless search of the person is reasonable only if it falls within a recognized exception."); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) (observing, in reference to criminal cases, that "[e]xcept in certain well-defined circumstances, a search or seizure in such a case is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause"); *see also Schenekl v. State*, 30 S.W.3d 412, 417 (Tex. Crim. App. 2000) (Meyers, J., concurring, joined by Holland and Johnson, JJ.) (concurring in upholding a statute authorizing law enforcement officers to randomly board boats to check for compliance with water-safety regulations but observing that the search "may not exceed its stated purpose" absent reasonable suspicion or probable cause). Based on this precedent, we conclude that the general Fourth Amendment balancing test is inapplicable in this case because appellee's blood was drawn in the context of an active criminal investigation where the primary law enforcement purpose was to gather evidence that would be used in a criminal prosecution. *See Riley*, 573 U.S. at ___, 134 S. Ct. at 2482; *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558; *Skinner*, 489 U.S. at 619; *see also Schenekl*, 30 S.W.3d at 417. We reject the State's second argument.

The State's third argument is that the mandatory blood-draw statute creates a valid exception to the warrant requirement because it is part of a regulatory scheme of driving, which is a highly regulated activity. The United States Supreme Court has held that "in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet reasonable legislative or administrative standards." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (internal quotation marks omitted). However, the

State did not make this argument to the trial court. An appellant may not raise an argument for the first time on appeal if it would serve as a basis for reversing the trial court's ruling on a motion to suppress. *Alford v. State*, 400 S.W.3d 924, 928–29 (Tex. Crim. App. 2013); *State v. Mercado*, 972 S.W.2d 75, 77 (Tex. Crim. App. 1998) (en banc). We hold that the State has waived this issue by failing to present it to the trial court.

The State asserts in its fourth argument that the search of appellee's blood was justified by exigent circumstances. One of the well-recognized exceptions to the warrant requirement is "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *McNeely*, 569 U.S. at ___, 133 S. Ct. at 1558 (citing *King*, 563 U.S. at ___, 131 S. Ct. at 1856). A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, such as law enforcement's need to provide emergency assistance to an occupant of a home; law enforcement's need to continue in "hot pursuit" of a fleeing suspect; the need of emergency responders to enter a burning building to put out a fire and investigate its cause; and, in some circumstances, the need to prevent the imminent destruction of evidence. *Id.* at 1558–59. Courts determine whether an exigency existed based on the totality of the circumstances. *Id.* at 1560. In *McNeely*, the United States Supreme Court held that the natural dissipation of alcohol in the bloodstream does not present a *per se* exigency that justifies an exception to the warrant requirement for nonconsensual blood testing in all DWI cases. *Id.* at 1561. Rather, courts must determine whether exigent circumstances make a warrantless search reasonable by looking at the totality of the circumstances. *Id.*

14

The State argues that the one hour and forty-five minutes which elapsed between the beginning of the stop and Johnson's arrival at the hospital with appellee presented a sufficient exigency because appellee's body was "actively getting rid of evidence of his intoxication" during that time. Moreover, Johnson testified without objection that Gonzales County had no magistrate on duty that could immediately sign a warrant. It would have taken additional time for Johnson to wake up a magistrate, have the magistrate travel to the hospital, and for Johnson to prepare a probable-cause affidavit for the magistrate to review. The State reasons that this additional time coupled with natural dissipation of alcohol in Martinez's blood created a sufficient exigency to dispense with the requirement to apply for a warrant.

We disagree. The *McNeely* Court held that "while the natural dissipation of alcohol in the blood may support a finding of exigency in a specific case, as it did in *Schmerber,* it does not do so categorically." *Id.* at 1563. The State has not pointed to any circumstances in this case presenting an exigency other than the presence of alcohol in Martinez's blood stream. The time between the initial stop and Johnson's arrival at the hospital, just under two hours, was not overly long, and there is no evidence in the record of how long it might have taken Johnson to apply for a warrant. As the *McNeely* Court recognized, "some delay between the time of the arrest or accident and the time of the test is inevitable regardless of whether police officers are required to obtain a warrant." *Id.* at 1561. Johnson also specifically testified that he could have applied for a warrant but relied on the mandatory blood-draw statute. The State's argument is simply that it would have taken too long to obtain a warrant and that it needed to search appellee's blood for alcohol before it dissipated. This is essentially the argument the United States

15

Supreme Court rejected in *McNeely*. *See id.* at 1563. Because the State did not present any exigent circumstances other than the natural dissipation of alcohol in appellee's bloodstream, we may not reverse the motion to suppress on the basis of exigent circumstances. *See id.*; *see also Forsyth*, 438 S.W.3d at 220 (refusing to reverse a motion to suppress when there was no showing of exigency other than the officer's testimony that it might have taken over an hour to obtain a warrant); *Gore*, 451 S.W.3d at 197 (deciding that a warrantless blood-draw could not be upheld on the grounds of exigency when officer did not explain why he felt he did not have time to obtain a warrant and there was no testimony regarding how long it might have taken to obtain one). We reject the State's fourth argument.

We overrule the State's second issue.

## IV. Conclusion

We affirm the order of the trial court. We lift the stay of further proceedings in the trial court that this Court granted on February 24, 2014.

<div style="margin-left:50%">

NORA L. LONGORIA
Justice

</div>

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
30th day of April, 2015.